Citation Nr: 1438779 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 09-15 131 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan


THE ISSUES

1. Entitlement to service connection for glaucoma in both eyes secondary to service-connected diabetes mellitus.

2. Entitlement to a rating in excess of 20 percent for diabetes mellitus.

3. Entitlement to an initial evaluation in excess of 10 percent for peripheral neuropathy of the right lower extremity.

4. Entitlement to an initial evaluation in excess of 10 percent for peripheral neuropathy of the left lower extremity.


REPRESENTATION

Appellant represented by: James G. Fausone, Attorney at Law



WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Suzie Gaston, Counsel


INTRODUCTION

The Veteran served on active duty from August 1967 to July 1970. 

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from rating decisions by the VA RO in Detroit, Michigan. By a rating action in January 2007, the RO denied the Veteran's claim of entitlement to service connection for glaucoma in both eyes. Subsequently, in an April 2008 rating action, the RO granted service connection for peripheral neuropathy of the right lower extremity, rated as 10 percent disabling, and service connection for peripheral neuropathy in the left lower extremity, rated as 10 percent disability. The April 2008 rating decision denied a claim of entitlement to a rating in excess of 20 percent for diabetes mellitus. 

On November 18, 2009, the Veteran appeared at the Detroit RO and testified at a videoconference hearing before the undersigned Veterans Law Judge, sitting in Washington, D.C. A transcript of the hearing is of record. 

In a September 2010 decision, the Board denied the Veteran's claim of entitlement to a rating in excess of 20 percent for diabetes mellitus. The Veteran then filed an appeal to the United States Court of Appeals for Veterans Claims (Court). A Joint Motion for Remand was submitted in May 2011, and the Court thereafter issued an order granting the motion and the matter was remanded to the Board for readjudication consistent with the motion. 

In January 2012, the Board remanded the case for further evidentiary development. A review of the record reflects compliance with the Board's directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998). The agency of original jurisdiction (AOJ) issued supplemental statements of the case (SSOCs) on the diabetes rating issue in November 2013 and March 2014. 

(The issues of entitlement to service connection for glaucoma, an initial evaluation in excess of 10 percent for peripheral neuropathy of the right lower extremity and an initial evaluation in excess of 10 percent for peripheral neuropathy in the left lower extremity are addressed in the remand that follows the decision below.)


FINDING OF FACT

The Veteran's diabetes mellitus requires the use of insulin and a restricted diet, but does not require the regulation of activities. 


CONCLUSION OF LAW

The criteria for an evaluation in excess of 20 percent for diabetes mellitus, type II, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.3, 4.7, 4.119, Diagnostic Code 7913 (2013). 


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating their claims for VA benefits, as codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2013). See also 38 C.F.R. §§ 3.159, 3.326(a) (2013). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant of the information and evidence not of record that is necessary to substantiate the claim; and to indicate which information and evidence VA will obtain and which information and evidence the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). The United States Court of Appeals for Veterans Claims (Court) has held that VCAA notice should be provided to a claimant before the initial RO decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). However, if VCAA notice is provided after the initial decision, such a timing error can be cured by subsequent readjudication of the claim, as in a statement of the case (SOC) or supplemental SOC (SSOC). Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). 

In this case, VA satisfied its duty to notify by means of a letter dated in December 2007 from the RO to the Veteran, which was issued prior to the RO decision in April 2008. An additional letter was issued in August 2013. Those letters informed the Veteran of what evidence was required to substantiate the claims and of his and VA's respective duties for obtaining evidence. Consequently, this letter complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) regarding VA's duty to notify. 

Regarding the duty to assist, the Veteran was provided an opportunity to submit additional evidence. It also appears that all obtainable evidence identified by the Veteran relative to his claim has been obtained and associated with the claims file, and that neither he nor his representative has identified any other pertinent evidence not already of record that would need to be obtained for a proper disposition of the rating issue decided herein. It is therefore the Board's conclusion that the Veteran has been provided with every opportunity to submit evidence and argument in support of his claim, and to respond to VA notice. 

The Board is unaware of any outstanding evidence or information that has not already been requested. The Veteran has been afforded VA examinations on the issue decided. McLendon v. Nicholson, 20 Vet. App. 79 (2006). The examinations were conducted by medical professionals who reviewed the medical records, solicited history from the Veteran, and examined the Veteran. The reports include all that is necessary to rate the disability. Nieves-Rodriguez v. Peake, 22 Vet. App 295 (2008). 

Accordingly, the Board finds that VA has satisfied its duty to notify and assist the Veteran in apprising him as to the evidence needed, and in obtaining evidence pertinent to his claim under the VCAA. Therefore, no useful purpose would be served in remanding this matter for yet more development. Such a remand would result in unnecessarily imposing additional burdens on VA, with no additional benefit flowing to the Veteran. The Court has held that such remands are to be avoided. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). 

II. Background

By a rating action in May 2004, the RO granted service connection for diabetes mellitus, type II, with an evaluation of 20 percent, effective January 13, 2004. 

The Veteran's claim for an increased rating for diabetes mellitus (VA Form 21-4138) was received in June 2007. In conjunction with his claim, the Veteran was afforded a VA compensation examination in December 2007. At that time, the Veteran indicated that he started on insulin in January 2004; he denied any side effects from his injections. The Veteran denied any episodes of hypoglycemic reactions or ketoacidosis. It was noted that the Veteran has been instructed to follow a restricted/special diet. The examiner also noted that the Veteran was not restricted in his ability to perform strenuous activities. It was reported that the Veteran was currently working as a pastor. He denied any cardiac symptoms associated with the diabetes. The Veteran reported suffering from erectile dysfunction, diabetic neuropathy and vascular disease. Examination of the lower extremities was normal, except for thin skin and absence of hair. Deep tendon reflexes were 2+ in all extremities. The pertinent diagnosis was type II diabetes mellitus. The examiner stated that the Veteran has essential hypertension; however, he also stated that it was not a complication of the diabetes because the onset of hypertension occurred prior to onset of diabetes. He also stated that the hypertension was not worsened by the diabetes. 

Received in April 2008 were VA progress notes dated from February 2006 to August 2007, reflecting ongoing clinical evaluation and treatment for several disabilities, including diabetes mellitus. The Veteran was seen for a follow-up evaluation in June 2007; at that time, he noted that his blood sugars were usually high in the evening after eating dinner. He denied any polyuria, polyphagia, polydipsia, or hyperglycemic episodes. The examiner noted that the Veteran had excellent laboratory results. The examiner discussed with the Veteran his blood sugars, which appeared to be stable; it was recommended that he increase his regular insulin in the evenings. 

VA progress notes dated from May 2008 through September 2008 show that the Veteran received follow-up evaluation for ocular hypertension and retinal check. The assessment was old central retinal vein occlusion, right; diabetes without retinopathy, bilateral; ocular hypertension, bilateral; and refractive error. 

At his personal hearing in November 2009, the Veteran testified that he has been taking insulin since 2004. The Veteran indicated that the diabetes mellitus was currently uncontrolled; he stated that it limits his ability to perform certain activities. The Veteran reported that the diabetes causes him to experience bouts of dizziness and wooziness. The Veteran indicated that while he takes short walks, he is unable to participate in strenuous exercises. The Veteran further testified that his doctor has told him that his eye disabilities are related to his diabetes mellitus. 

Received in October 2010 were VA progress notes dated from July 2008 to September 2010, which show that the Veteran received follow-up evaluation for ocular hypertension and retinal check. These records do not reflect any complaints regarding the diabetes mellitus. 

The Veteran was afforded a VA examination in August 2013. It was noted that the Veteran was diagnosed with type II diabetes mellitus in March 2002. It was noted that the Veteran was currently taking insulin three times per day. He denied any history of hospitalization or surgery, episodes of hypoglycemia or ketoacidosis. It was noted that the Veteran was instructed to follow a special diet, but he was not restricted in his ability to perform strenuous activities. It was noted that the Veteran currently experienced diabetic peripheral neuropathy and erectile dysfunction. The examiner noted that the Veteran was last seen for his diabetes mellitus in April 2013; he was counseled on proper diet and increase on exercise. It was noted that, on the average, the Veteran is followed every 4 months. The examiner also noted that review of all medical notes demonstrate no care for any ketoacidotic or hypoglycemic events; he noted that the Veteran had had no urgent care visits or emergency room visits for treatment of hypoglycemia. He has not been hospitalized for ketoacidosis, and he no recorded blood sugars high enough to induce ketoacidosis on his home glucose monitor. The examiner noted that the Veteran does require a caloric and carbohydrate restricted diet as part of the management of his diabetes mellitus type 2; however, the medical records document that the Veteran reports that he is not adhering to his recommended dietary restrictions. The examiner also noted that there are no documented episodes of ketoacidosis documented in the claims file or in the Veteran's VA medical records, and he denies any episodes of treatment for ketoacidosis when specifically asked during the examination. There are also no documented episodes of medically defined hypoglycemia documented in the claims file or in the Veteran's VA medical records. The Veteran denied any episodes of treatment for hypoglycemia either by his own hand or by others when specifically asked during the examination. Therefore, the examiner concluded that the Veteran was not experiencing any ketoacidosis or hypoglycemia due to his service-connected diabetes mellitus, type II. 

The examiner further noted that the Veteran is scheduled to see his primary care provider who manages his diabetes mellitus treatment every 6 months. The examiner related that the Veteran requires insulin injections to manage his diabetes mellitus. No oral hypoglycemic agents are required. The examiner stated that the Veteran's diabetes alone does not require that he avoid strenuous occupational and recreational activities. It was noted that his medical care providers are prescribing an increase in his exercise, which the medical records show that he fails to perform. The Veteran has continuously been encouraged to increase his exercise and lose weight. The Veteran confirmed that he has been ordered to increase exercise when specifically asked during the examination. The examiner did note that the Veteran requires accommodation for timely breaks and meal times and access to restroom with safe needle disposal canisters; he further noted that the Veteran may require accommodation for excess absences due to frequency of medical care visits required for management of his diabetes. 

III. Analysis

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. See 38 U.S.C.A. § 1155 (West 2002 & Supp. 2013); 38 C.F.R. Part 4 (2013). The provisions of 38 C.F.R. § 4.1 require that each disability be viewed in relation to its history, and that there be emphasis upon the limitation of activity imposed by the disabling condition. The regulation at 38 C.F.R. § 4.2 requires that medical reports be interpreted in light of the entire recorded history, and that each disability must be considered from the point of view of the Veteran's working or seeking work. Separate diagnostic codes identify the various disabilities. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7. Otherwise, the lower rating is to be assigned. 

The requirements for evaluation of the complete medical history of the claimant's condition operate to protect claimants against adverse decisions based upon a single, incomplete, or inaccurate report and to enable VA to make a more precise evaluation of the level of the disability and of any changes in the condition. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Moreover, VA has a duty to acknowledge and consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). 

The Veteran's diabetes mellitus has been rated 20 percent disabling under VA's Schedule for Rating Disabilities, 38 C.F.R. § 4.120, Diagnostic Code 7913. According to Diagnostic Code 7913, a 20 percent evaluation is authorized when the diabetes requires insulin and restricted diet, or oral hypoglycemic agent and restricted diet. A 40 percent evaluation is assigned when the diabetes requires insulin, restricted diet, and regulation of activities. A 60 percent evaluation is authorized when the diabetes requires insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions that require one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated. A 100 percent rating is warranted for diabetes mellitus requiring more than one daily injection of insulin, restricted diet, and regulation of activities (avoidance of strenuous occupational and recreational activities) with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated. 38 C.F.R. § 4.119, Diagnostic Code 7913. 

The Board has reviewed the evidence of record and finds that the current evaluation of 20 percent under Diagnostic Code 7913 accurately reflects the extent of the Veteran's diabetes and that a higher rating is not warranted. As noted above, in order to be entitled to the next higher evaluation of 40 percent under Diagnostic Code 7913, the evidence must show that the Veteran's diabetes mellitus requires insulin, a restricted diet, and regulation of activity. These criteria are conjunctive, meaning all three elements must be met. See Melson v. Derwinski, 1 Vet. App. 334 (June 1991) (use of the conjunctive "and" in a statutory provision meant that all of the conditions listed in the provision must be met); compare Johnson v. Brown, 7 Vet. App. 95 (1994) (only one disjunctive requirement must be met in order for an increased rating to be assigned). This is especially so where the criteria for the lesser rating contemplates 2 of the 3 criteria for the higher rating. 

Based on the evidence of record, a disability rating in excess of 20 percent for the Veteran's diabetes mellitus is not warranted. The evidence overall reflects that the Veteran's diabetes is adequately compensated by the 20 percent rating as he is shown to require insulin and restricted diet. However, there is no indication that his activities have been regulated due to his diabetes. None of the medical records suggests any regulation or restriction of his activities based on his diabetes, aside from dietary restrictions. In fact, during the December 2007 VA examination, it was specifically noted that the Veteran was not restricted in his ability to perform strenuous activities secondary to diabetes. More recently, following a VA examination in August 2013, a VA examiner concluded that the Veteran's diabetes alone does not require that he avoid strenuous occupational and recreational activities. Rather, he noted that the Veteran's medical care providers had been prescribing an increase in his exercise; however, he noted that the medical records reflect that the Veteran failed to perform the recommended exercises. The Veteran has continuously been encouraged to increase his exercise and lose weight. The examiner further noted that the Veteran confirmed that he has been ordered to increase exercise when specifically asked during the examination. At the hearing, the Veteran reported that his activities are affected by his diabetes. It is noteworthy that, at the same hearing, the Veteran reported walking anywhere from 1 to 11/2 miles. That the Veteran avoids strenuous activity or believes that his activities should be regulated is not determinative. The rating criteria allow for a higher rating when there is in fact a regulation of activities (avoidance of strenuous occupational and recreational activities). In this case, the Veteran has been specifically instructed to engage in more exercise. His personal avoidance of such does not satisfy the criteria. To allow for a higher rating because a claimant chooses to avoid activity when care providers have in fact prescribed greater activity would make a mockery of the rating criteria, which contemplate increasing degrees of debility such that activities need to regulated. Given the mandate of the regulation, the preponderance of the evidence is against the claim. 

Further, although the Veteran has reported that his diabetes is uncontrolled and that his blood sugar fluctuates, there is no indication that he has been hospitalized due to episodes of ketoacidosis or hypoglycemic reactions; nor does he visit a diabetic care provider at least twice a month or more so as to warrant a higher 60 percent or 100 percent disability rating. In fact, during the August 2013 VA examination, the examiner noted that the Veteran is scheduled to see his primary care provider who manages his diabetes mellitus treatment every 6 months. In sum, with the exception of the disabilities that have been assigned separate ratings (which ratings are not addressed in this decision), the Veteran's symptoms associated with his diabetes are contemplated in the current 20 percent disability rating. 

The potential application of various provisions of Title 38 of the Code of Federal Regulations has also been considered but the record does not present such "an exceptional or unusual disability picture as to render impractical the application of the regular rating schedule standards." 38 C.F.R. § 3.321(b) (1). In this regard, the problems experienced by the Veteran are the very ones contemplated by the rating criteria. The Board therefore finds that there has been no showing that the service-connected diabetes has resulted in marked interference with employment or necessitated frequent periods of hospitalization so as to render impractical the application of the regular rating schedule standards. In the absence of such factors, the Board finds that criteria for submission for consideration of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b) (1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). 

The Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a claimant may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to address all the service-connected symptoms. However, in this case, there is no indication that service-connected symptoms have not been attributed to specific service-connected disabilities, and the Board finds no additional symptoms related to the combination of the Veteran's service-connected disabilities. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

Based on the analysis above, the Board finds that the preponderance of the evidence is against the claim for a rating in excess of 20 percent. As the preponderance of the evidence weighs against the claim, the benefit-of-the-doubt doctrine is not helpful to the claimant. 38 U.S.C.A. § 5107(b).


ORDER

A rating in excess of 20 percent for diabetes mellitus is denied. 


REMAND

As for the remaining issues on appeal, the Board finds that a number of its September 2010 remand directives were not completed. As such, another remand is necessary to ensure substantial compliance with the earlier remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding that a remand confers on the claimant, as a matter of law, the right to compliance with the remand order). Additional evidentiary and procedural development is also necessary to ensure that VA has adhered to general due process requirements as well as its own duties to notify and assist a claimant in the development of a claim. See, e.g., 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2013); 38 C.F.R. § 3.159 (2013). 

With respect to the Veteran's claim for service connection for glaucoma, claimed as secondary to the service-connected diabetes mellitus, the Board remanded this appeal, in part, so that the AOJ might obtain relevant treatment records and obtain a VA examination that considered whether the Veteran's glaucoma was caused by or made worse by his service-connected diabetes mellitus or service-connected central retinal vein occlusion in the right eye. The record indicates that the Veteran was thereafter scheduled for a VA examination in January 2011. A review of his claims folder indicates that he failed to report for the scheduled examination. However, in a statement in support of claim (VA Form 21-4138), dated in March 2011, the Veteran indicated that he had called to reschedule the examination, but the rescheduled dates were never entered in the computer system. In that statement, he requested that the examinations be rescheduled. It does not appear that the Veteran was ever rescheduled. 

Under these circumstances, the Board finds that the RO should arrange for the Veteran to undergo VA ophthalmology examination, by an appropriate physician, at a VA medical facility. The Veteran is hereby advised that failure to report to the scheduled examination, without good cause, may result in denial of the claim for service connection (as the original claim will be considered on the basis of the evidence of record). See 38 C.F.R. § 3.655 (2013). Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant and death of an immediate family member. If the Veteran fails to report to the scheduled examination, the RO should obtain and associate with the claims file a copy of the notice of the date and time of the examination sent to him by the pertinent medical facility. 

The Board notes that, while VA has a statutory duty to assist the Veteran in developing evidence pertinent to a claim, the Veteran also has a duty to assist and cooperate with VA in developing evidence; the duty to assist is not a one-way street. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991); see Hayes v. Brown, 5 Vet. App. 60, 68 (1993) (VA's duty to assist is not a one-way street; if a veteran wishes help, he/she cannot passively wait for it in those circumstances where his/her own actions are essential in obtaining the putative evidence). 

As regards the claim for higher ratings for peripheral neuropathy of the right and left lower extremities, the Board previously remanded these claims in September 2010 for additional development. The Board indicated that, after completion of that requested development, the RO should readjudicate the claims and, if any benefit remained denied, the Veteran was to be provided a supplemental statement of the case (SSOC). See 38 C.F.R. §§ 19.31, 19.37. Additional development was undertaken, including providing him VA compensation examinations to reassess the severity of these disabilities; however he has not since been furnished a SSOC regarding these claims, although they have continued to be denied as reflected in the Virtual VA electronic records. (A rating action in March 2014 continued and confirmed the 10 percent ratings for the peripheral neuropathy of the right and left lower extremities.) 

Given that its prior remand orders have not been fully implemented, the Board must now take appropriate action to ensure compliance so as not to prejudice the Veteran. Stegall, 11 Vet. App. at 271. Accordingly, the Veteran should be issued a SSOC. 38 C.F.R. § 19.37(a). The claim should then be recertified to the Board for further appellate review. 

In light of the discussion above, and to ensure full compliance with due process requirements, the case is REMANDED to the AOJ for the following actions: 

1. The AOJ should obtain and associate with the claims file all outstanding VA and/or private treatment records pertaining to the Veteran's claimed glaucoma that have not been previously obtained. Notify the Veteran if any putative records cannot be obtained. 38 C.F.R. § 3.159(e) (1). 

2. After the development requested above has been completed, the Veteran should be scheduled for an eye examination. The Veteran must be given adequate notice of the date and place of any requested examination. A copy of all notifications, including the address where the notice was sent must be associated with the claims file. The Veteran is to be advised that failure to report for a scheduled VA examination without good cause may have an adverse effect on his claim. 38 C.F.R. § 3.655. The examiner should review the record, examine the Veteran, and provide an opinion as to the medical probabilities that glaucoma has been caused or made worse by service-connected diabetes or service-connected central retinal vein occlusion in the right eye. All opinions should be explained in the context of the record and should be supported by an explanation of the medical principles associated with the onset or progress of glaucoma. 

3. The AOJ must ensure that all requested actions have been accomplished in compliance with this remand. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. See Stegall v. West, 11 Vet. App. 268 (1998). 

4. Thereafter, the AOJ should readjudicate the claims remaining on appeal. If any benefit sought remains denied, the Veteran and his representative should be provided a supplemental statement of the case (SSOC), which includes a summary of additional evidence submitted, and any additional applicable laws and regulations. The SSOC must provide reasons and bases for the decision(s) reached. Thereafter, the Veteran and his representative should be given the opportunity to respond before the case is returned to the Board. 

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This case must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B , 7112 (West Supp. 2013). 



________________________________
MARK F. HALSEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs