**Virginia C. MELSON, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–1.**

United States Court of Veterans Appeals.

Submitted March 20, 1991.

Decided June 27, 1991.

Virginia C. Melson, pro se.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Jacqueline E. Monroe, Washington, D.C., for appellee.

Before NEBEKER, Chief Judge, and KRAMER and STEINBERG, Associate Judges.

KRAMER, Associate Judge:

On September 13, 1989, the Board of Veterans' Appeals (BVA) held that the appellant, Virginia C. Melson, was not entitled to a non-service-connected burial allowance and recoupment of transportation costs to help defray the expenses of burying her husband, veteran James H. Melson. Upon consideration of the record and briefs in this case, we hold that BVA did not err in applying the relevant laws and regulations in reaching its decision, and we therefore affirm.

## I.

The appellant's late husband's service to this country began in 1941, and included active duty service in both the Second World War and the Korean conflict. In addition, the appellant has stated in her pleadings that her husband served in the United States Air Force Reserves for a period stretching over three decades, finally retiring in 1968. (While the record before this Court does not contain evidence to verify this service, the Secretary of Veteran Affairs (Secretary) does not dispute it.)

On December 6, 1984, James Melson suffered a massive heart attack which apparently left him with brain damage and totally disabled. Over the next four years, other than during several periods of hospitalization, he lived at home with his wife under the auspices of the Department of Veterans Affairs (VA) Home Based Health Care Program (HBHC), a program wherein patients living at home are provided with

medical assistance and care at VA expense. While in this program, the appellant provided the day-to-day nursing home-type care required by her husband. (The appellant has stated that she and her husband entered this program instead of placing her husband, at greater VA expense, in a nursing home.) On September 17, 1988, James Melson died.

After James Melson's burial, the appellant filed a claim with the Buffalo, New York, VA Regional Office for burial benefits. In January 1989, the Regional Office granted the appellant $226.00 for headstone and plot allowances, but informed her that she was not eligible for a burial allowance and recoupment of transportation costs because James Melson was not in receipt of VA pension or compensation payments, did not have an application pending for them, and was not hospitalized at VA expense at the time of his death. The BVA subsequently affirmed the Regional Office decision. A timely appeal to this Court then followed.

## II.

The appellant advances three arguments for entitlement to the burial allowance and recoupment of transportation costs she seeks. First, she asserts that "but for the receipt of military retirement pay" her husband "would have been in receipt of compensation," and that as such she is entitled to a burial allowance under 38 C.F.R. § 3.1600(b)(1) (1990). Second, she asserts that, because her husband was a veteran of two wars, 38 C.F.R. § 3.1600(b)(3) (1990) entitles her to burial benefits. Third, she asserts that the HBHC program qualifies as VA hospitalization under 38 C.F.R. § 3.1600(b)(4) (1990), and thus, under that provision too, she is entitled to a burial allowance and recoupment of transportation costs. We will address each of these arguments in turn.

## A.

■ The appellant's first argument relies on 38 C.F.R. § 3.1600(b)(1), which in turn is based on 38 U.S.C. § 902(a)(1) (1988). This statutory provision states that if a veteran's death is not service-connected, a burial allowance will still be granted if

> at the time of death [the veteran] was in receipt of compensation (or but for the receipt of military retirement pay would have been in receipt of compensation) or was in receipt of [a] pension. . . .

38 U.S.C. § 902(a)(1). Since it is undisputed that James Melson was not in receipt of any compensation or pension benefits from the VA at the time of his death, the only way that § 902(a)(1) could authorize recovery is if the record shows that the requirements of the parenthetical portion of the provision were met. Contrary to the appellant's assertions, that is not the case.

The key distinction to be made here is that, whereas the main body of the provision discusses both compensation and pension benefits, the parenthetical is limited to cases where a veteran, but for the receipt of retirement pay, would be in receipt of *compensation* benefits. Since compensation benefits are available only when the veteran has a service-connected disability (as opposed to non-service-connected pension benefits, which are based solely on a veteran's financial need), a minimum requirement for entitlement under this parenthetical is the existence of a service-connected disability. The only reference in the record even suggesting the possibility of a service-connected disability arises from an alleged incident which occurred in a VA hospital in 1985. *See generally* 38 U.S.C. § 351 (1988). However, this matter was not properly before the BVA at the time of its decision. The appellant did not raise this possible theory of service connection, nor was there sufficient evidence in the record to suggest that such a service-connected disability existed. *See Myers v. Derwinski*, 1 Vet.App. 127 (1991) (BVA is required to address those issues properly before it). Therefore, since the parenthetical's threshold requirement of the existence of a service-connected disability was not met, this Court must hold that the BVA did not err in failing to apply this provision.

## B.

■ The appellant's argument that 38 C.F.R. § 3.1600(b)(3) entitles her to recovery also fails. This provision is based on 38 U.S.C. § 902(a)(2) (1988) which provides that the United States government will help defray the costs of burying a veteran

who was a veteran of any war ... whose body is held by a State ..., *and* with respect to whom the Secretary determines—

(A) that there is no next of kin or other person claiming the body of the deceased veteran, *and*

(B) that there are not available sufficient resources to cover burial and funeral expenses....

38 U.S.C. § 902(a)(2) (emphasis added). As is apparent from the use of the conjunctive "and" in this provision, all of the conditions listed in § 902(a)(2) must be met before entitlement to a burial allowance is established. So, even though James Melson's service in two wars meets the first condition listed in § 902(a)(2), the appellant is not entitled to a burial allowance and recoupment of transportation costs under this provision unless the remaining conditions are also met. This, however, is not the case. James Melson's body was not being held by a state, there was a next of kin who claimed the body, and evidently there were enough funds in his estate to cover the cost of burying him. Therefore, since the remaining conditions listed in § 902(a)(2) were not satisfied, this provision does not entitle the appellant to the recovery she seeks.

## C.

■ The appellant's final argument, that HBHC qualifies as VA hospitalization for the purposes of 38 C.F.R. § 3.1600(c), fails as well. This regulation is based on 38 U.S.C. § 903(a) (1988) which provides that a burial allowance and transportation costs will be paid

[w]hen a veteran dies in a [VA] facility (as defined in section 601(4) of this title) to which the deceased was properly admitted for hospital, nursing home, or domiciliary care ... or in an institution

at which the deceased veteran was receiving ... nursing home care under section 620 of this title.

38 U.S.C. § 903(a). In order to recover under § 903(a), the veteran must have died in a VA facility or in an institution where the veteran was receiving § 620 nursing home care. Neither is the case here.

As to a "VA facility", this term is defined by 38 U.S.C. § 601(4) (1988) as:

(A) facilities over which the [Secretary] has direct jurisdiction;

(B) Government facilities for which the [Secretary] contracts; and

(C) public or private facilities at which the [Secretary] provides recreational activities....

Since the appellant's home was not under the jurisdiction of the Secretary, was not a government facility, and was not a facility at which the Secretary provided recreational activities, the appellant's home fails to qualify as a "VA facility".

With respect to whether appellant's home was a § 620 "institution", § 620 provides for nursing home care at "a non-[VA] nursing home ... at the expense of the United States". 38 U.S.C. § 620(a)(1) (1988). Section 620(e)(2) defines a non-VA nursing home as "a public or private institution not under the direct jurisdiction of the Secretary which furnishes nursing home care." 38 U.S.C. § 620(e)(2) (1988). Section 620(b) prohibits admission to a § 620 institution unless "such institution is determined by the [Secretary] to meet such standards as the [Secretary] may prescribe." 38 U.S.C. § 620(b) (1988). Subsection (b) goes on to require that such standards and any report of inspection relating to compliance therewith be made available to all licensing and other regulatory authorities. Finally, "nursing home care", as defined by 38 U.S.C. § 101(28) (1988), involves licensure:

The term "nursing home care" means the accommodation of convalescents or other persons who are not acutely ill and not in need of hospital care, but who require nursing care and related medical services, if such nursing care and medical services are prescribed by, or are

performed under the general direction of, persons duly licensed to provide such care. Such term includes services furnished in skilled nursing care facilities, in intermediate care facilities, and in combined facilities....

Based on the fact that a § 620 institution involves prescribed standards, inspections, and licensure, it is unreasonable to interpret 38 U.S.C. § 903(a)(2) to include the veteran's private residence as "an institution in which the deceased veteran was receiving ... nursing home care under section 620."

### III.

In reviewing BVA decisions, this Court is bound by the laws passed by the Congress of the United States and the regulations lawfully adopted by the VA thereunder. Under these laws and regulations, this Court is compelled to hold that the BVA did not err in deciding that the appellant, despite the extensive and honorable service given to this country by her deceased husband, is not entitled to the recovery she seeks. The decision of the BVA is therefore AFFIRMED.