Citation Nr: 1319529 
Decision Date: 06/18/13 Archive Date: 06/27/13

DOCKET NO. 09-42 334A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Prior to October 21, 2009, entitlement to an initial rating in excess of 20 percent for degenerative disc disease (DDD) of the lumbar spine.

2. From October 21, 2009 to April 19, 2012, entitlement to an initial rating in excess of 40 percent for DDD of the lumbar spine.

3. On and after April 19, 2012, entitlement to an initial rating in excess of 20 percent for DDD of the lumbar spine.

4. Entitlement to an initial rating in excess of 10 percent for left leg sciatica associated with DDD of the lumbar spine.

5. Entitlement to a compensable rating for hemorrhoids.





REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

J. Smith, Counsel


INTRODUCTION

The Veteran served on active duty from February 1983 to February 2007. The Veteran's claim comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Department of Veterans Affairs' (VA) Regional Offices (RO) in Winston-Salem, North Carolina, and Roanoke, Virginia, respectively. The Roanoke RO has current jurisdiction of the appeal. 

The Board notes that in October 2012, a statement of the case was issued on a claim for increased rating for dry eye syndrome. However, a substantive appeal was never received and the appeal was not perfected for this issue. Accordingly, the claim is not currently on appeal.

Additionally, the Board notes that the claim involving an increased rating for the Veteran's lumbar spine disability has been expanded to include the issue of a separate neurological rating, as captioned above. The Board finds this issue is part and parcel of the initial claim for an increased rating for DDD of the lumbar spine.

Essentially, in an appealed May 2007 rating decision, the Veteran was awarded service connection for DDD of the lumbar spine and assigned a 10 percent rating, effective March 1, 2007. In an October 2009 rating decision, this evaluation was increased to 20 percent, effective March 1, 2007. Also in the October 2009 rating decision, service connection was awarded for sciatica of the left leg, associated with DDD of the lumbar spine. A rating of 10 percent was assigned for the sciatica, effective March 1, 2007.

In the Veteran's November 2009 VA Form 9 in which he perfected his appeal of the increased rating claim for DDD of the lumbar spine, he stated that he wished to appeal the rating assigned for sciatica of the left leg. A statement of the case was not issued on the sciatica claim. However, rather than require the RO to issue a statement of the case pursuant to Manlincon v. West, 12 Vet. App. 238 (1998), and the Veteran to perfect the appeal, and in recognition of the applicable diagnostic code requiring consideration of all neurological complications, the Board finds it most efficient and least prejudicial to the Veteran to treat the issue as part and parcel of the underlying claim for an increased rating for DDD of the lumbar spine. 

The Board has considered documentation included in the Virtual VA system in reaching the determinations below. No new records pertinent to this appeal were found therein.

Aside from the hemorrhoids claim, the remainder of the appeal is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDING OF FACT

The Veteran's hemorrhoids are shown to be large and frequently recurring.


CONCLUSION OF LAW

The criteria for the assignment of a 10 percent disability rating, but no higher, for the service-connected hemorrhoids have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. § 4.114, Diagnostic Code (DC) 7336 (2012).


REASONS AND BASES FOR FINDING AND CONCLUSION

Notice and Assistance

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2012). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The Board finds that the content requirements of a duty to assist notice have been fully satisfied. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). A letter from the RO dated in March 2009 provided the Veteran with an explanation of the type of evidence necessary to substantiate his claim, as well as an explanation of what evidence was to be provided by him and what evidence the VA would attempt to obtain on his behalf. The letter additionally provided him with information concerning the evaluation and effective date that could be assigned should his claim be granted, pursuant to Dingess v. Nicholson, 19 Vet. App. 473 (2006). VA has no outstanding duty to inform the Veteran that any additional information or evidence is needed.

VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. Here, the Board finds that all relevant facts have been properly developed, and that all evidence necessary for equitable resolution of the issue has been obtained. The Veteran's service treatment records and post service treatment records have been obtained. He has been afforded the opportunity for a personal hearing before the Board. He has been afforded VA examinations for the claim being adjudicated. Those examinations are adequate as they contain a history elicited from the Veteran, a thorough examination, and findings applicable to the relevant rating criteria. The Veteran stated that since 2002, he has received physical therapy and chiropractic treatment at the Naval Hospital/Clinic in Ingleside Texas, the Bremerton Naval Hospital, and the chiropractic clinic attached to the Naval Clinic in Virginia Beach. These records are not associated with the claims file; the Board finds that remand of this issue is not necessary as such records are not material to the claim being decided herein. See Bell v. Derwinski, 2 Vet. App. 611, 613 (1992) (noting that where VA medical treatment records are material to the issue on appeal and are not included within the claims file, a remand is necessary to acquire such VA records, because VA is deemed to have constructive knowledge of certain documents which are generated by VA agents or employees). The Board does not have notice of any additional relevant evidence which is available but has not been obtained. 

For the foregoing reasons, the Board concludes that all reasonable efforts have been made by the VA to obtain evidence necessary to substantiate the Veteran's claim. Therefore, no further assistance to the Veteran with the development of evidence is required. 

Analysis

The service-connected hemorrhoid disability is rated as noncompensably disabling under DC 7336, the code for internal or external hemorrhoids. 

Diagnostic Code 7336 provides for a 0 percent rating where there are mild or moderate hemorrhoids. A 10 percent rating is warranted when there is evidence of large or thrombotic, irreducible hemorrhoids with excessive redundant tissue evidencing frequent recurrences. A maximum 20 percent rating is assigned when there is evidence of hemorrhoids with persistent bleeding and secondary anemia, or hemorrhoids with fissures. 

Considering the pertinent evidence in light of the above, the Board finds that a 10 percent rating for the Veteran's hemorrhoids is warranted. 

In December 2008, the Veteran reported to a VA clinic to establish care and address ongoing issues. He reported having rectal bleeding at times, straining, and hard stool. His last stool with blood had been one month ago. A rectal examination revealed that the prostate was smooth without masses, and the stool heme test was negative. Later in December 2008, the Veteran reported to the gastrointestinal clinic for an initial consultation regarding rectal bleeding. A rectal examination revealed a large, internal excoriated hemorrhoid. He was diagnosed with rectal bleeding with internal hemorrhoids the most likely cause. A colonoscopy was recommended. There was normal sphincter tone, and also a small external hemorrhoid. In January 2009, a colonoscopy was conducted and was normal. 

On VA examination in October 2009, the Veteran reported having been diagnosed with external hemorrhoids. The condition had existed for three years. He reported swelling and perianal discharge. He had no anal itching, diarrhea, pain, or tenesmus. He did not have a leakage of stool. He reported that he was never hospitalized for hemorrhoids, and had been prescribed Kao-Tin and Psyllium oral. He denied any overall functional impairment from the condition. On rectal examination, the Veteran's internal hemorrhoids showed evidence of frequent recurrence. There was no excessive redundant tissue. There was no thrombosis, and the hemorrhoids were reducible. There was no evidence of bleeding. There was no reduction of lumen. Sphincter control, rectal tone, and anal reflexes were normal. There was no evidence of ulceration, fissures, reduction of lumen, loss of rectal tonus, trauma, rectal bleeding, proctitis, infections, spinal cord injury, or protrusion or loss of sphincter control. The examiner found the hemorrhoid condition did not cause significant anemia and there were no findings of malnutrition. 

In October 2011, the Veteran sought private treatment. He was diagnosed with a hemorrhoid flare. Differential diagnoses included a fissure, fistula, perirectal abscess, and thrombosed hemorrhoid. 

On VA examination in April 2012, the Veteran was found to have mild or moderate hemorrhoids with rectal discomfort, bleeding, and itching. The examiner did not check the boxes indicating persistent bleeding, anemia, or fissures. The hemorrhoids were characterized as small or moderate. There was no impairment on the Veteran's ability to work.

Because there is evidence to support that the Veteran's internal hemorrhoids are large, documented in December 2008, and have frequent recurrences, documented on VA examination in October 2009, the Board finds that the service-connected disability picture more closely resembles the criteria warranting the assignment of a 10 percent evaluation. 

In so finding, it is acknowledged that the evidence does not show the hemorrhoids are thrombotic or that they have excessive redundant tissue. However, the criteria set forth under Diagnostic Code 7336 are disjunctive. See Johnson v. Brown, 7 Vet. App. 95 (1994) (only one disjunctive "or" requirement must be met in order for an increased rating to be assigned). Compare Melson v. Derwinski, 1 Vet. App. 334 (1991) (use of the conjunctive "and" in a statutory provision meant that all of the conditions listed in the provision must be met). 

Although a 10 percent evaluation is appropriate, a rating in excess of this is not warranted. The evidence of record does not show that the Veteran's hemorrhoids involve persistent bleeding, secondary anemia, or fissures. Rectal bleeding was diagnosed in December 2008, and the Veteran reported bleeding at times. Bleeding was also noted on the January 2009 colonoscopy. However, there was no bleeding on VA examination in October 2009, and the April 2012 VA examiner found no persistent bleeding. The evidence of record does not show anemia. October 2009 and April 2012 VA examiners specifically found no anemia on examination. An October 2011 private record noted differential diagnoses that included fissure, but the Board finds that any such provisional diagnosis is outweighed by the findings in October 2009 and April 2012 of no fissures. As such, according to the relevant diagnostic criteria, the identified symptomatology warrants no greater than the 10 percent rating. See 38 C.F.R. § 4.114, Diagnostic Code 7336.

The Board has considered the application of other diagnostic codes. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). But the evidence does not demonstrate injuries of the mouth or lips, loss of tongue, stricture, spasm, or diverticulum of the esophagus, peritoneal adhesions, gastric, duodenal, or marginal ulcers, gastritis, postgastrectomy syndromes, stenosis or injury of the stomach, residuals of injury of the liver, cirrhosis of the liver, chronic cholecystitis, chronic cholelithiasis, cholangitis, injury or removal of the gallbladder, irritable colon syndrome, amebiasis, dysentery, colitis, distomiasis, enteritis, enterocolitis, diverticulitis, resection of the small or large intestine, fistula of the intestine, tuberculous of the peritonitis, impairment of sphincter control, stricture of rectum and anus, prolapse of the rectum, fistula in ano, pruritis ani, inguinal hernia, ventral hernia, femoral hernia, symptomatic visceroptosis, malignant neoplasms of the digestive system, benign neoplasms, chronic liver disease, hiatal hernia, pancreatitis, vagotomy, or hepatitis. See 38 C.F.R. § 4.114, 7200-7335, 7337-7354 (2012). Accordingly, an increased evaluation is not warranted under alternative diagnostic codes.

The Board has considered the Veteran's own assertions regarding his symptoms, which he is competent to provide. See, e.g., Layno v. Brown, 6 Vet. App. 465, 470 (1994) and Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). Here, the Veteran's assertions are not considered more persuasive than the objective medical findings which, as indicated above, do not support a higher rating than that already assigned. The medical evidence, prepared by skilled professionals, is more probative than the lay assertions, when it comes to such issues as the presence of anemia, fistulas as those are determinations that require medical skill and expertise and are not observable and within lay capability. See Layno, 6 Vet. App. at 469. Additionally, the Veteran himself noted that his rectal bleeding occurred at times, but did not indicate the bleeding was persistent.

Consideration has also been given regarding whether the schedular evaluation is inadequate, thus requiring that the RO refer a claim to the Chief Benefits Director or the Director, Compensation and Pension Service, for consideration of "an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." 38 C.F.R. § 3.321(b)(1) (2012); Barringer v. Peake, 22 Vet. App. 242, 243-44 (2008) (noting that the issue of an extraschedular rating is a component of a claim for an increased rating and referral for consideration must be addressed either when raised by the veteran or reasonably raised by the record). An extra-schedular evaluation is for consideration where a service-connected disability presents an exceptional or unusual disability picture with marked interference with employment or frequent periods of hospitalization that render impractical the application of the regular schedular standards. Floyd v. Brown, 9 Vet. App. 88, 94 (1996). An exceptional or unusual disability picture occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of the veteran's service-connected disability. Thun v. Peake, 22 Vet. App. 111, 115 (2008). If there is an exceptional or unusual disability picture, then the Board must consider whether the disability picture exhibits other factors such as marked interference with employment and frequent periods of hospitalization. Thun, 22 Vet. App. at 115-116. When those two elements are met, the appeal must be referred for consideration of the assignment of an extraschedular rating. Otherwise, the schedular evaluation is adequate, and referral is not required. 38 C.F.R. § 3.321(b)(1); Thun, 22 Vet. App. at 116. 

In this regard, the schedular evaluations in this case are not inadequate. A rating in excess of 10 percent is provided for certain manifestations of the service-connected hemorrhoids but the medical evidence reflects that those manifestations are not present in this case. Additionally, the diagnostic criteria adequately describe the severity and symptomatology of the Veteran's hemorrhoids, as the criteria assess the size and recurrence of hemorrhoids, as well as bleeding, anemia, and fissures. Moreover, the evidence does not demonstrate other related factors. The veteran has not required hospitalization due to service-connected hemorrhoids and marked interference of employment has not been shown. Accordingly, this issue need not be referred for consideration of an extraschedular rating.

Finally, the Board has considered whether an inferred claim for a total disability rating based on individual unemployability has been raised pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009). However, there is no indication, or contention, that the Veteran's hemorrhoids impact his ability to work. As such, the Board finds that Rice is inapplicable in the present case.
 
For the foregoing reasons, the Board concludes that the record supports assignment of a 10 percent but no higher rating for the Veteran's hemorrhoids since the date of claim for increase. The Board has applied the benefit-of-the doubt doctrine in determining that the criteria for a compensable rating are met, but finds that the preponderance of the evidence is against assignment of any higher rating. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 


ORDER

An increased rating of 10 percent, but no higher, for service-connected hemorrhoids is granted, subject to the regulation governing the disbursement of VA monetary benefits.


REMAND

The Board finds that further development is necessary before the claims remaining on appeal can be properly adjudicated.

Initially, it appears there may be outstanding federal treatment records pertinent to the claim. In an August 2008 VA Form 21-4142, the Veteran stated that since 2002, he has received physical therapy and chiropractic treatment at the Naval Hospital/Clinic in Ingleside Texas, the Bremerton Naval Hospital, and the chiropractic clinic attached to the Naval Clinic in Virginia Beach. It does not appear that records from any of these facilities have been requested or obtained. 38 U.S.C. § 5103A(b)(3) requires that VA make attempts to get federal records "until the records are obtained unless it is reasonably certain that such records do not exist or that further efforts to obtain those records would be futile." 

The Board also finds that a VA examination is needed to fully and fairly evaluate the Veteran's claims involving DDD of the lumbar spine. See Allday v. Brown, 7 Vet. App. 517, 526 (1995) (holding that where the record does not adequately reveal current state of claimant's disability, fulfillment of statutory duty to assist requires a contemporaneous medical examination). 

The record contains conflicting findings regarding the neurological symptomatology associated with the Veteran's disability. For example, on VA examination in August 2008, the Veteran was diagnosed with DDD with arthrosis of the lumbosacral spine without neural encroachment and without true radiculopathy. On VA examination in October 2009, a history of the Veteran's disability was obtained. The Veteran reported having bladder problems. He stated that he urinated three times a day at intervals of every four hours. He reported urinary frequency at night two times at intervals of every four hours. He denied incontinence. The examiner rendered no objective findings or diagnoses regarding these urinary symptoms. In a November 2009 private medical report, the Veteran was diagnosed with chronic, intermittent, bilateral lower extremity pain and dysesthesia secondary to LS sensory radiculopathy, as well as left-sided extensor hallucis longus weakness secondary to LS motor radiculopathy. In other November 2009 private medical records, the Veteran received epidural steroid injections for lumbosacral radiculopathy. On VA examination in April 2012, the examiner found the Veteran did not have radiculpathy or any other associated neurological abnormalities, including bowel or bladder problems. 

The Board finds that prior to appellate adjudication, this evidence should be reconciled and the issue of whether the Veteran has had associated neurological symptomatology at any point during the appeal should be clarified. 


Accordingly, the case is REMANDED for the following action:

1. Obtain all outstanding pertinent treatment records from the following facilities:
a. Naval Hospital/Clinic in Ingleside, Texas
b. Naval Hospital in Bremerton, WA
c. Chiropractic clinic attached to the Naval Clinic in 
 Virginia Beach, VA

The RO must follow the procedures set forth in 38 C.F.R. § 3.159(c) as regards to requesting records from Federal facilities. All records and/or responses received should be associated with the claims file. If no records can be obtained, VA's efforts and any resolution determined must be documented for the record, and compliance with the requirements of 38 C.F.R. § 3.159(e)(i)-(iv) (2012) must be achieved.

2. After any additional records are associated with the claims file, the Veteran should be afforded a VA examination to ascertain the current severity and manifestations of his service-connected lumbar spine disability. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file and to comment on the severity of the Veteran's service-connected lumbar spine disability. The examiner should report all signs and symptoms necessary for rating the Veteran's disability under the rating criteria. The rationale for all opinions expressed must be provided. If an opinion cannot be provided without resort to speculation, it must be noted in the examination report, and a rationale provided for that conclusion. 

Orthopedic findings should include the range of motion of the lumbar spine in degrees and state whether there is any form of ankylosis. The examiner should also state the total duration of any incapacitating episodes over the past 12 months. The presence of objective evidence of pain, excess fatigability, incoordination, and weakness should also be noted, as should any additional disability due to these factors. 

Neurological findings must include an opinion as to whether, at any point during the appeal, it has been at least as likely as not (e.g. 50 percent probability or greater) that the Veteran's current neurological symptoms, including radiculopathy in both legs as documented in the treatment records discussed above, and bladder dysfunction, are due to his lumbar spine disability. If due to the spine disorder, the examiner must specifically identify the neurological disorder, indicate which nerves, if any, are involved, and indicate if there is complete paralysis. If incomplete, the examiner should indicate if the severity is mild, moderate, moderately severe, or severe. 

3. The Veteran should be notified that it is his responsibility to report for the examination and to cooperate in the development of the claims. The consequences for failure to report for a VA examination without good cause may include denial of the claim. 
38 C.F.R. §§ 3.158, 3.655 (2012). 

4. After the development requested has been completed, the RO should review the examination report to ensure that it is in complete compliance with the directives of this REMAND. If the report is deficient in any manner, the RO must implement corrective procedures at once. 
 
5. After the completion of any action deemed appropriate in addition to that requested above, the appellant's claims should be readjudicated. All applicable laws and regulations, and all evidence received should be considered. If any benefit sought remains denied, the appellant should be provided a supplemental statement of the case and given the opportunity to respond. 

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).






______________________________________________
K. MILLIKAN
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs