Citation Nr: 1456929 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 12-11 320A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Medical Center in Gainesville, Florida


THE ISSUE

Entitlement to payment or reimbursement of unauthorized medical expenses incurred in connection with treatment provided on January 13 and 14, 2012, at the Shands Jacksonville Medical Center (Shands).


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Jeanne Schlegel, Counsel



INTRODUCTION

The Veteran served on active duty from August 2006 to August 2010. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a February 2012 decision issued by the Department of Veterans' Affairs Medical Center (VAMC) in Gainesville, Florida.

There are no documents related to this case in the Veteran Benefits Management System (VBMS) paperless claims file. 


FINDINGS OF FACT

1. The Veteran's service connected conditions include endometriosis. 

2. The Veteran received medical treatment on January 13 and 14, 2012, at Shands, for primary symptoms of vaginal irritation and discharge, which were not shown to be etiologically related to endometriosis. 

3. The services provided by Shands were not authorized in advance by VA.

4. The Veteran's symptoms at the times she presented and was examined at Shands on January 13, 2012, were not such that a prudent layperson would have reasonably viewed the visit as an emergency or thought that a delay in seeking immediate attention would have been hazardous to life or health.

5. VA treatment facilities were reasonably available for treatment of the symptoms.



CONCLUSION OF LAW

The criteria for payment of reimbursement of unauthorized medical expenses incurred in connection with treatment provided on January 13 and 14, 2012, at Shands, have not been met. 38 U.S.C.A. §§ 1725, 1728 (West 2002 & Supp. 2014); 38 C.F.R. §§ 17.53, 17.54, 17.120, 17.130, 17.1000-17.1002 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA's Duties to Notify and Assist

VA must assist a claimant at the time he or she files a claim for benefits. 38 U.S.C.A. §§ 5100, 5102-5103A, 5106, 5107, 5126 (West 2002); 38 C.F.R. § .159 (2014). As part of this assistance, VA is required to notify claimants of what they must do to substantiate their claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. §3.159(b)(1). There is no indication in these provisions, however, that Congress intended to revise the unique, specific claim provisions of 38 U.S.C. Chapter 17. 38 C.F.R. §§ 17.120-17 .132; Barger v. Principi, 16 Vet. App. 132 (2002).

In this regard, the provisions of Chapter 17 of 38 U.S.C.A., and 38 C.F.R. Part 17, contain their own notice requirements. Regulations at 38 C.F.R. § 17.120-32 discuss the adjudication of claims for reimbursement of unauthorized medical expenses. A claimant has the duty to submit documentary evidence establishing the amount paid or owed, an explanation of the circumstances necessitating the non-VA medical treatment, and "other evidence or statements that are deemed necessary and requested for adjudication of the claim." 38 C.F.R. § 17.124. When a claim for payment/reimbursement of unauthorized medical expenses is disallowed, VA is required to notify the Veteran of its reasons and basis for denial, his or her appellate rights, and to furnish all other notifications or statements required by Part 17 of Chapter 38. 38 C.F.R. § 17.132.

February and May 2012 letters from the VAMC in Gainesville, Florida advised the Veteran of the criteria necessary to substantiate her claim, and notified her of her appellate rights. The letters further explained to the Veteran the basis for the denial of her claim, and afforded her the opportunity to present information and evidence in support of the claim. Moreover, there is no indication that there is any relevant evidence outstanding in this claim. The Board finds the current record sufficient to make a decision on the claim. While a medical opinion was not sought, as the issue involves a prudent lay person's finding of emergency, rather than a medical determination, the Board finds that such is not necessary to decide the claim. 38 U.S.C.A. § 1725(f)(1); Swinney v. Shinseki, 23 Vet. App. 257 (2009). Hence, the Board may address the merits of the appeal without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993).

Background

VA records on file show that the Veteran was seen in November 2011, at which time she complained of vaginal itching and stated that she believed she had a yeast infection. Bacterial vaginitis was assessed and 2 medications were prescribed. In mid-December 2011, a VA nurse and the Veteran had a telephone conversation relating to a yearly Pap test. The Veteran did not complain of any symptoms or request to be seen at that time. There is no record of contact with or treatment through VA from that point through the treatment at issue. 

Regarding the treatment in question, a report from Shands reflects that the Veteran presented on January 13, 2012, at which time the reason for her visit was described as "yeast infection." It was noted that the Veteran complained of a 3 day history of vaginal irritation and discharge and indicated that she had no relief with over the counter medications. She denied being in pain. A prior medical history of endometriosis was noted, but the records do not reflect that the Veteran's symptoms or treatment were associated with that condition and endometriosis was not diagnosed. During evaluation, the Veteran did indicate that she had vaginal pain, described as mild in severity. Vaginal discharge and vaginal candidiasis were diagnosed. 

In a statement dated in January 2012, the Veteran indicated that she checked herself into Shands due to symptoms of vaginal discharge and pain, because she could no longer handle the pain. She indicated that due to (service-connected) female health issues like endometriosis, a yeast infection which might seem like a routine problem to some, could dramatically change her body/lifestyle. She stated that when her yeast infection began, she called to set up an appointment with VA and was told that the soonest she could get an appointment was 10 days later. There is no record of any such communication on file. 

Analysis

 A. Prior Authorization

In claims involving payment or reimbursement by VA for medical expenses incurred as a result of treatment at a private facility, it must first be determined whether the services for which payment is sought were authorized by VA. See 38 U.S.C.A. § 1703(a); 38 C.F.R. § 17.54. 

The Veteran has not alleged, and the evidence does not show, that she actually sought and received prior authorization from VA for the treatment she received on January 13 and 14, 2012, at Shands, nor was an application for authorization made to VA within 72 hours of the services rendered. Similes v. Brown, 6 Vet. App. 555, 556 (1994) (noting that the determination as to whether VA gave prior authorization for non-VA medical care received at a private facility is factual, rather than medical, in nature). In the absence of prior authorization or deemed prior authorization for medical services, there is no factual or legal basis for payment or reimbursement by VA under 38 U.S.C.A. § 1703; 38 C.F.R. §§ 17.52, 17.53, and 17.54 for medical services received at Shands on January 13 and 14, 2012. 

 B. Without Prior Authorization

VA amended its regulations concerning reimbursement for emergency hospital care and medical services provided to eligible Veterans for service-connected and nonservice-connected conditions at non-VA facilities. The purpose of these amendments was to implement provisions from § 402 of the Veterans' Mental Health and Other Care Improvements Act of 2008 (the Act), Public Law No. 110-387, 122 Stat. 4110, which revised 38 U.S.C. §§ 1725 and 1728. 

The regulatory amendments made the following revisions in accordance with the Act: (1) requiring VA to reimburse the covered costs for emergency care received at non-VA facilities for eligible Veterans under §§ 1725 and 1728; (2) extending VA's payment authority for emergency treatment received at a non-VA facility until "such time as the Veteran can be transferred safely to a [VA] facility or other Federal facility and such facility is capable of accepting such transfer," or until such transfer was accepted, so long as the non-VA facility "made and documented reasonable attempts to transfer the Veteran to a [VA] facility or other Federal facility"; and, (3) making the definition of "emergency treatment" in § 1725(f)(1) applicable to § 1728, including by replacing the standard for determining the existence of a medical emergency in § 17.120(b) with the "prudent layperson" standard. The amendments likewise affected 38 C.F.R. §§ 17.120, 17.121, 17.1001, 17.1002, 17.1005, 17.1006, 17.1008. The effective date of these amendments was January 20, 2012. See 76 Fed. Reg. 79067 -79072 (Dec. 21, 2011). Accordingly, the Board will apply the currently applicable regulations. As a practical matter, the disposition of this claim would remain the same even if the former criteria were applied. 

As determined above, authorization for the January 13 and 14, 2012 treatment at Shands was not obtained in advance, or within 72 hours of the visit. See 38 C.F.R. § 17.54 (where an emergency exists at the time of admission, an authorization may be deemed a prior authorization if an application is made to VA within 72 hours after the hour of admission). As a result, the claim must be considered under 38 U.S.C.A. § 1728 or § 1725, which pertain to payment for unauthorized medical expenses. 

The Veteran maintains that her January 2012 treatment at Shands was for a service-connected disability. The record shows that while service connection has been established for endometriosis, this condition was not diagnosed in conjunction with the private treatment at issue and the symptoms treated at that time were not otherwise linked to that condition; thus, the criteria for payment under 38 U.S.C.A. § 1728 are not met.

Consequently, the only possible route to entitlement to unreimbursed medical expenses pursuant to the Veterans Millennium Health Care and Benefits Act, payment or reimbursement of non-VA emergency medical services for nonservice-connected disorders is available if certain conditions are met. 38 U.S.C.A. § 1725; 38 C.F.R. §§ 17.1000-17.1008. Specifically, to be eligible for reimbursement under these provisions for a nonservice-connected disorder, the Veteran must satisfy nine separate conditions:

Payment or reimbursement for emergency services for nonservice-connected conditions in non-VA facilities may be authorized under 38 U.S.C.A. § 1725 and 38 C.F.R. §§ 17.1000-1008. To be eligible for reimbursement under this authority the Veteran has to satisfy all of the following conditions: 

(a) The emergency services were provided in a hospital emergency department or a similar facility held out as providing emergency care to the public; 

(b) The claim for payment or reimbursement for the initial evaluation and treatment is for a condition of such a nature that a prudent layperson would have reasonably expected that delay in seeking immediate medical attention would have been hazardous to life or health (this standard would be met if there were an emergency medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) that a prudent layperson who possesses an average knowledge of health and medicine could reasonably expect the absence of immediate medical attention to result in placing the health of the individual in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part); 

(c) A VA or other Federal facility/provider was not feasibly available and an attempt to use them beforehand would not have been considered reasonable by a prudent layperson (as an example, these conditions would be met by evidence establishing that a Veteran was brought to a hospital in an ambulance and the ambulance personnel determined that the nearest available appropriate level of care was at a non-VA medical center); 

(d) The claim for payment or reimbursement for any medical care beyond the initial emergency evaluation and treatment is for a continued medical emergency of such a nature that the Veteran could not have been safely transferred to a VA or other Federal facility; 

(e) At the time the emergency treatment was furnished, the Veteran was enrolled in the VA health care system and had received medical services under authority of 38 U.S.C. Chapter 17 within the 24-month period preceding the furnishing of such emergency treatment; 

(f) The Veteran is financially liable to the provider of emergency treatment for that treatment; 

(g) The Veteran has no coverage under a health-plan contract for payment or reimbursement, in whole or in part, for the emergency treatment (this condition cannot be met if the Veteran has coverage under a health-plan contract but payment is barred because of a failure by the Veteran or provider to comply with the provisions of that health-plan contract, e.g., failure to submit a bill or medical records within specified time limits, or failure to exhaust appeals of the denial of payment); 

(h) If the condition for which the emergency treatment was furnished was caused by an accident or work-related injury, the claimant has exhausted without success all claims and remedies reasonably available to the Veteran or provider against a third party for payment of such treatment; and the Veteran has no contractual or legal recourse against a third party that could reasonably be pursued for the purpose of extinguishing, in whole or in part, the Veteran's liability to the provider; and 

(i) The Veteran is not eligible for reimbursement under 38 U.S.C.A. § 1728 for the emergency treatment provided (38 U.S.C.A. § 1728 authorizes VA payment or reimbursement for emergency treatment to a limited group of Veterans, primarily those who receive emergency treatment for a service-connected disability). See 38 C.F.R. § 17.1002. 

In order to be entitled to payment or reimbursement for medical expenses incurred without prior authorization from VA, all of the listed requirements must be met; therefore, the claim must be denied if there is a failure to satisfy any single criterion. See Melson v. Derwinski, 1 Vet. App. 334 (1991) (use of the conjunctive "and" in a statutory provision means that all of the conditions listed in the provision must be met). 

The claim in this case has been denied because it has been determined that a medical emergency was not present and that VA treatment was feasibly available. As such, to warrant reimbursement under either 38 U.S.C.A. § 1725, the Veteran would have to be found to have treatment for a medical emergency of such nature that a prudent layperson would have reasonably expected that delay in seeking immediate medical attention would have been hazardous to life or health, and VA or other Federal facilities were not feasibly available and an attempt to use them beforehand or obtain prior authorization for the services required would not have been reasonable, sound, wise, or practicable, or treatment had been or would have been refused.

The conditions for an emergency are defined as follows: 

The [medical services were] rendered in a medical emergency of such nature that a prudent layperson would have reasonably expected that delay in seeking immediate medical attention would have been hazardous to life or health. This standard would be met if there were an emergency medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) that a prudent layperson who possesses an average knowledge of health and medicine could reasonably expect the absence of immediate medical attention to result in placing the health of the individual in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. 38 C.F.R. §§ 17.120(b), 17.1002(b). Medical evidence is not necessary to establish the existence of an emergency on admission under the prudent layperson standard. Swinney v. Shinseki, 23 Vet. App. 257 (2009). 

The Veteran maintains that her January 13 and 14, 2012 treatment for primary symptoms of vaginal irritation was emergent due to pain she was experiencing and reports that she could not be seen at a VA facility until 10 days after her symptoms began. 

The evidence fails to show that the Veteran's condition was emergent or that VA facilities were not feasibly available. Reports from Shands indicate that the Veteran reported that her pain was minimal on evaluation, and that she had denied having pain entirely on presentation. On this point, the Board finds the objective and contemporaneous medical reports to be the most credible and reliable evidence on the matter. In essence, there is no indication that the pain was of such severity as to constitute a medical emergency. Further, the reports did not include any indication that the Veteran or the treating personnel perceived the Veteran's condition as emergent. The evidence indicates that the Veteran sought treatment for symptoms which: (1) had existed for days; and (2) did not present a hazard to her life or health. The Board concludes that an actual emergency was not present, nor was the prudent layperson standard for an emergency met. 

With respect to the issue of whether a VA facility was feasible available for care, the Veteran had been seen and appropriately treated by VA in November 2011 for symptoms similar to those treated at Shands. During a mid-December 2011 call with a VA nurse, the Veteran did not report having any symptoms or request to be seen. The Veteran maintains that she called VA at the time of onset of her symptoms (presumably in January 2012) and was told she could not been seen for an appointment for 10 days. The Board notes that when she was seen at Shands, the Veteran had already been symptomatic for 2-3 days and the fact that evidence reflects that she experienced at most mild pain when seen on January 13, 2012, indicates not only that the condition was not emergent, but that she could have been seen by VA a week later for an appointment. 

Further, evidence on file reflects that the VA medical facilities in Gainesville and Lake City, Florida are open 24 hours, 7 days a week; a fact which would have been evident to the Veteran had she actually had an emergent situation and made an effort to use them. Essentially, it is clear that VA facilities were feasibly available for treatment in January 2012, but that the Veteran elected to be treated by a private source. No reimbursement or payment of services not previously authorized will be made when such treatment was procured through private sources in preference to available Government facilities. 38 C.F.R. § 17.130.

Given the findings made herein, there is no basis for payment or reimbursement of unauthorized medical expenses incurred in connection with treatment provided on January 13 and 14, 2012, at Shands under 38 U.S.C.A. § 1725. The Board is mindful that all reasonable doubt is to be resolved in the Veteran's favor. However, here the preponderance of the evidence is against the claim, and the claim must be denied. 38 U.S.C. § 5107(b); see Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Payment or reimbursement of unauthorized medical expenses incurred in connection with treatment provided on January 13 and 14, 2012, at the Shands Jacksonville Medical Center is denied.



____________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs