﻿Citation Nr: AXXXXXXXX
Decision Date: 11/27/19 Archive Date: 11/27/19

DOCKET NO. 190402-8079
DATE: November 27, 2019

ORDER

From October 23, 2014 to October 11, 2018, entitlement to an evaluation in excess of 10 percent for service-connected patellofemoral pain syndrome of the left knee is denied.

From October 23, 2014 to October 11, 2018, entitlement to an evaluation in excess of 10 percent for service-connected patellofemoral pain syndrome of the right knee is denied.

From January 1, 2017, entitlement to a separate 10 percent rating, but no higher, for left knee instability is granted. 

From January 1, 2017, entitlement to a separate 10 percent rating, but no higher, for right knee instability is granted. 

Entitlement to extraschedular consideration for service-connected patellofemoral pain syndrome of the left knee and patellofemoral pain syndrome of the right knee is denied.

FINDINGS OF FACT

1. From October 23, 2014 to October 11, 2018, the Veteran’s service-connected patellofemoral pain syndrome of the left knee manifested at worst by painful and limited range of motion from 10 degrees extension to 90 degrees flexion after repetitive testing.

2. From October 23, 2014 to October 11, 2018, the Veteran’s service-connected patellofemoral pain syndrome of the right knee manifested at worst by painful and limited range of motion from 10 degrees extension to 90 degrees flexion after repetitive testing.

3. From January 1, 2017, the Veteran’s service-connected patellofemoral pain syndrome of the left knee manifested as slight instability.

4. From January 1, 2017, the Veteran’s service-connected patellofemoral pain syndrome of the right knee manifested as slight instability. 

5. The Veteran is currently receiving the correct schedular rating for patellofemoral pain syndrome of the left knee and patellofemoral pain syndrome of the right knee; and the functional effects of his bilateral patellofemoral pain syndrome are contemplated by the rating criteria.

CONCLUSIONS OF LAW

1. From October 23, 2014 to October 11, 2018, the criteria for a rating in excess of 10 percent for patellofemoral pain syndrome of the left knee, to include on an extraschedular basis, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321(b)(1), 4.1-4.7, 4.40, 4.45, 4.71a, Diagnostic Code 5261.

2. From October 23, 2014 to October 11, 2018, the criteria for a rating in excess of 10 percent for patellofemoral pain syndrome of the right knee, to include on an extraschedular basis, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321(b)(1), 4.1-4.7, 4.40, 4.45, 4.71a, Diagnostic Code 5261.

3. From January 1, 2017, the criteria for a separate 10 percent rating, but no higher, for left knee instability have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321(b)(1), 4.1-4.7, 4.40, 4.45, 4.71a, Diagnostic Code 5257.

4. From January 1, 2017, the criteria for a separate 10 percent rating, but no higher, for right knee instability have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321(b)(1), 4.1-4.7, 4.40, 4.45, 4.71a, Diagnostic Code 5257.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from January 1984 to August 1986.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from an October 2018 rating decision issued by the Department of Veterans Affairs (VA) Regional Offices (RO).

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

Here, in a July 2015 rating decision, the RO granted service connection for the Veteran’s patellofemoral pain syndrome of his left and right knees, evaluating each as 10 percent disabling, effective October 23, 2014. In January 2017, the RO issued another rating decision, evaluating the Veteran’s service-connected patellofemoral pain syndrome of the left knee a temporary rating of 100 percent for surgical or other treatment necessitating convalescence, effective September 6, 2016 to January 1, 2017, and continuing the Veteran’s disability evaluation at 10 percent from January 1, 2017. Therefore, this decision has been made excluding the period of temporary total evaluation during the appeal period.

In May 2018, the Veteran elected to participate in the RAMP appeal process and requested a “supplemental claim” of his appeal. The RO then issued a rating decision in October 2018 denying the Veteran’s claim for entitlement to ratings in excess of 10 percent for his bilateral patellofemoral pain syndrome. In April 2019, the Veteran opted for direct review by the Board. Direct review is the appeal option to the Board in which a Board decision is issued based on evidence of record at the time of the prior decision. The Board cannot hold a hearing or accept into the record additional evidence in its direct review.

1. From October 23, 2014 to October 11, 2018, entitlement to an evaluation in excess of 10 percent for service-connected patellofemoral pain syndrome of the left knee is denied.

2. From October 23, 2014 to October 11, 2018, entitlement to an evaluation in excess of 10 percent for service-connected patellofemoral pain syndrome of the right knee is denied.

3. From January 1, 2017, entitlement to a separate 10 percent rating, but no higher, for left knee instability is granted. 

4. From January 1, 2017, entitlement to a separate 10 percent rating, but no higher, for right knee instability is granted. 

5. Entitlement to extraschedular consideration for service-connected patellofemoral pain syndrome of the left knee and patellofemoral pain syndrome of the right knee is denied.

Disability evaluations are determined by evaluating the extent to which a veteran’s service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity in civilian occupations resulting from such diseases and injuries, and the residual conditions. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

Separate Diagnostic Codes (DCs) identify various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3.

A veteran’s entire history is reviewed when making a disability determination. 38 C.F.R. § 4.1. When the factual findings show distinct time periods during which a claimant exhibits symptoms of the disability at issue and such symptoms warrant different evaluations, staged evaluations may be assigned. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

Under 38 C.F.R. § 4.59, painful motion is an important factor of joint disability and painful joints are entitled to at least the minimum compensable rating for the joint. Where functional loss is alleged due to pain upon motion, the provisions of 38 C.F.R. § 4.40 and § 4.45 must be considered. DeLuca v. Brown, 8 Vet. App. 202, 207-08 (1995). Pain which does not rise to the level of functional loss as contemplated by § 4.40 and § 4.45 may still result in functional loss if it limits the ability to perform the normal working movements of the body with normal excursion, strength, coordination, or endurance. Mitchell v. Shinseki, 25 Vet. App. 32, 43 (2011).

DC 5261 provides that limitation of motion of the knee will be assigned a noncompensable rating when extension is limited to 5 degrees. A 10 percent evaluation requires extension limited to 10 degrees; a 20 percent rating requires extension limited to 15 degrees; a 30 percent evaluation requires extension limited to 20 degrees; a 40 percent rating requires extension limited to 30 degrees; and a maximum 50 percent rating is assigned when extension is limited to 45 degrees.

Under Diagnostic Code 5260, a noncompensable rating is warranted for flexion limited to 60 degrees. A 10 percent rating is warranted for flexion limited to 45 degrees. A 20 percent rating is warranted for flexion limited to 30 degrees. A 30 percent rating is warranted for flexion limited to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260.

Normal range of motion for the knee is from 0 degrees of extension to 140 degrees of flexion. 38 C.F.R. § 4.71, Plate II.

The Veteran was examined for his knee conditions in July 2015. At that time, his range of motion was limited to 10 degrees extension and 90 degrees flexion in both knees. He reported daily flare-ups that made it sometimes hard for him to get up or bend. He had to get down on all fours to get his shoes. He also reported constant use of a brace and cane. He exhibited no additional functional loss after repetitive testing. Instability was not indicated in both knees. The Veteran was noted as having meniscus conditions, but he had no current symptoms in his right knee. He had a left meniscal tear and frequent episodes of joint pain. After this examination, the next visit (of record) to a doctor regarding knee pain was in May 2016. See May 2016 VA Telehealth Note.

The Veteran underwent left knee surgery in September 2016, for which the RO properly compensated the Veteran as temporarily totally disabled. See September 2016 VA Orthopedic Surgery Notes; January 2017 Rating Decision. The Veteran has not submitted any additional evidence before his September 2016 surgery exhibiting any exacerbation in motion limitations.

Moreover, the Board does not find in the record any evidence of increased limitations in range of motion for the right knee from October 23, 2014 to October 11, 2018.

To warrant the next higher rating of 20 percent, the evidence must show extension limited to 15 degrees or flexion limited to 30 degrees. The Board acknowledges that the Veteran’s CAPRI records reflect that he had complaints of increased pain in both his left knee and right knee after his left knee surgery in September 2016. See VA medical records dated from January 2017 to September 2018. However, even when considering the Veteran’s reports of increased pain, there is no medical evidence showing any further restriction in his limitation of motion due to pain for the above-mentioned time periods that would be the equivalent of extension limited to greater than 10 degrees or flexion limited to greater than 45 degrees. The Board therefore finds that no higher rating is warranted from October 23, 2014 to October 11, 2018 for the right and left knees under DCs 5260 and 5261.

Regarding functional loss, the Board has also considered the provisions of 38 C.F.R. §§ 4.40, 4.45, 4.59, and the holdings in DeLuca and Mitchell. The Veteran has already been assigned 10 percent ratings for painful and limited motion. The Board is not obligated to assign any higher rating in the absence of pain which has been demonstrated to decrease motion to an extent that it would be comparable to a loss of extension beyond 10 degrees or flexion greater than 45 degrees. There is no indication of any flare-ups or periods of pain following repetitive motion which have resulted in any further limitation of motion. Without clinical medical evidence indicating such additional functional limitations, the Board is unable to find that the Veteran’s pain is so disabling as to actually or effectively limit extension and flexion of the knees to such an extent as to warrant assignment of higher or separate ratings.

The Board acknowledges that the Veteran’s bilateral knee disabilities have periods of flare-ups that cause increased pain and make it difficult to get up or bend. The July 2015 VA examination reflects that there is a functional impact to avoid bending down, squatting, climbing stairs, and running. However, these associated functional limitations are contemplated by the current 10 percent ratings, especially considering that his limitation of extension had not risen to any higher than 10 degrees prior to his July 2015 examination and that his limitation of flexion had not risen to compensable levels. See 38 C.F.R. §§ 4.40, 4.45; see also Mitchell, 25 Vet. App. at 42-43; DeLuca, 8 Vet. App. at 206-07.

The Board has also considered the other Diagnostic Codes pertaining to the knee and leg. Other disability ratings may be assigned only if the symptomatology for a disability is not duplicative or overlapping with the symptomatology of any other disability. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994); Lyles v. Shulkin, 29 Vet. App. 107 (2017) (holding that 38 C.F.R. § 4.14 prohibits paying compensation twice for the same symptoms or functional impairment). 

Diagnostic Code 5257 provides for assignment of a 10 percent rating when there is slight recurrent subluxation or lateral instability, a 20 percent rating when there is moderate recurrent subluxation or lateral instability, or a 30 percent evaluation for severe knee impairment with recurrent subluxation or lateral instability. 38 C.F.R. § 4.71a, Diagnostic Code 5257. 

Diagnostic Code 5258 provides a separate 20 percent rating for dislocated semilunar cartilage with frequent episodes of “locking,” pain, and effusion into the joint. 38 C.F.R. § 4.71a, Diagnostic Code 5258. 

In a February 2017 VA medical report, the Veteran reported that his left knee was locking and catching and felt like it buckled at times. He had been ambulating with a cane for some time now, but was not allowed to use it at work because he needed to have his hands free. 

An April 2018 VA orthopedic surgery consultation reveals that the Veteran was having some giving way of the right knee, which recently gave way and caused him to fall down on his left knee. The Veteran was assessed with right knee giving way with history of meniscectomy on the left knee with severe arthritis found. 

In a September 2018 VA medical report, the Veteran reported having some giving way of his knees, more in the right knee than the left knee. He noted mild swelling and pain in both knees. An x-ray on the left knee revealed small joint effusion. He was ordered a knee brace to wear for support and protection.

After consideration of the medical and lay evidence, the Board resolves reasonable doubt in favor of the Veteran and finds that since January 1, 2017, separate ratings of 10 percent for instability of the right and left knee are appropriate.

Prior to January 1, 2017, the medical and lay evidence doesn’t show any knee instability. Indeed, the July 2015 VA examination indicated that there was no instability in either knee. However, since January 1, 2017, the Veteran’s knees have been manifested by slight instability. There has been some giving way in both knees, including one episode that resulted in a fall, and the Veteran reported use of a cane and was prescribed a knee brace. In light of the medical and lay evidence demonstrating slight instability, the Board resolves all reasonable doubt in favor of the Veteran and finds that 10 percent ratings, but no higher, are warranted for the Veteran’s bilateral knee disabilities since January 1, 2017. However, 20 percent ratings are not warranted, as the overall evidence does not show that the Veteran’s bilateral knee instability has been moderate in nature. See 38 C.F.R. § 4.71a, Diagnostic Code 5257. 

With respect to dislocated semilunar cartilage, the Board acknowledges that a July 2015 VA examination showed evidence of a left meniscal tear and frequent episodes of joint pain. However, there was no evidence of frequent episodes of effusion or locking. While the Veteran reported locking in his left knee in February 2017 and an x-ray of the left knee revealed small joint effusion in September 2018, these episodes do not rise to the level of being frequent. The criteria under Diagnostic Code 5258 are conjunctive, not disjunctive; thus, all criteria must be met. See Melson v. Derwinski, 1 Vet. App. 334 (June 1991) (use of the conjunctive “and” in a statutory provision meant that all of the conditions listed in the provision must be met). Therefore, the Board finds that a separate rating under Diagnostic Code 5258 is not warranted for dislocated semilunar cartilage. See 38 C.F.R. § 4.71a, Diagnostic Code 5258. 

Accordingly, the Board finds no basis for assignment of initial ratings higher than 10 percent for patellofemoral pain syndrome of the left knee and patellofemoral pain syndrome of the right knee due to limitation of motion, but finds that separate 10 percent ratings for right and left knee instability are warranted. In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. 38 U.S.C. § 5107(b).

The Veteran also asserts that this case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the applicable regular schedular standards. See September 2019 Appellate Brief. Thus, the Board interprets his statement as a request for extraschedular consideration. 

The determination of whether a claimant is entitled to an extraschedular rating under 38 C.F.R. § 3.321(b) is a three-step inquiry. Thun v. Peake, 22 Vet. App. 111, 115 (2008). First, there must be a finding that the evidence of record presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Id. In this regard, the Board must compare the level of severity of symptomatology of the claimant’s service-connected disability with the established criteria found in the rating schedule for that disability. See id. If the rating criteria reasonably describe the claimant’s disability level and symptomatology, then the claimant’s disability picture is contemplated by the rating schedule, in which case the assigned schedular evaluation is adequate and no referral is required. Id. Second, if the schedular criteria are found to be inadequate to evaluate the disability, the Board must determine whether the exceptional disability exhibits other related factors such as marked interference with employment or frequent periods of hospitalization. Id. If so, then the third step requires the case to be referred to the Under Secretary for Benefits or the Director of Compensation and Pension Services to determine whether the disability requires the assignment of an extraschedular rating. Id.

The Veteran claims that his bilateral knee conditions increased in severity from October 23, 2014 to October 11, 2018. The Veteran has noted in his CAPRI records an increase in pain; however, as noted above, painful motion is already considered in the schedular rating criteria. See 38 C.F.R. § 4.71a, Diagnostic Code 5261; DeLuca, 8 Vet. App. at 207-08; Mitchell, 25 Vet. App. at 43. Therefore, the Veteran’s disabilities do not present such an exceptional picture that the available schedular evaluation is inadequate.

The Board has considered the fact that the Veteran was hospitalized for knee surgery in September 2016. However, he received compensation for a temporary total evaluation for that period of hospitalization, and there is no additional evidence of record that the Veteran experienced any frequent periods of hospitalization for his bilateral knee disorders. Thus, the first and second Thun elements have not been satisfied. Referral to the Under Secretary for Benefits or Director of Compensation and Pension Services is not warranted. 

 

JENNIFER HWA

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. Seserman

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.