Citation Nr: 1536768 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 07-38 777 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to a rating in excess of 20 percent for postoperative chronic compartment syndrome of the left leg.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

Mary E. Rude, Associate Counsel


INTRODUCTION

The Veteran served on active duty from November 1988 to October 1990.

This case comes before the Board of Veterans' Appeals (the Board) on appeal from a June 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

The Veteran testified at a Board hearing in September 2010. A transcript is of record.

The Board remanded the claim in December 2011, February 2013, May 2013, and September 2014 for further development of the evidence.

At the Veteran's December 2014 VA examination, he raised the contention that he believes he may have a cut or irritated nerve in the left ankle related to surgeries performed for his service-connected left leg chronic compartment syndrome. The Board finds that this constitutes a separate disability from the issue currently on appeal, and therefore the issue of entitlement to service connection for a left ankle disorder, to include as secondary to service-connected left leg chronic compartment syndrome, is referred to the agency of original jurisdiction (AOJ) for appropriate action. 38 C.F.R. § 19.9(b) (2014).


FINDING OF FACT

The Veteran's postoperative chronic compartment syndrome of the left leg has manifested by claudication on walking between 25 and 100 yards on a level grade at 2 miles per hour and an ankle/brachial index of 1.06, with no objective evidence of trophic changes.



CONCLUSION OF LAW

The criteria for a rating in excess of 20 percent for postoperative chronic compartment syndrome of the left leg have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.20, 4.62, 4.104, Diagnostic Codes 7111, 7114, 7115 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). 

VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). VCAA notice should be provided to a claimant before the initial unfavorable decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In a claim for increase, VA must issue a generic notice that informs a Veteran of the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. See Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

The Veteran was issued VCAA letters in April 2005, June 2006, and December 2008. These letter specifically advised him of the evidence needed to substantiate his increased rating claim, and outlined his responsibilities and those of VA in obtaining relevant evidence. They also described in detail how VA assigns disability ratings and effective dates for awards. Thus, these letters comply with VA's duty to notify under 38 C.F.R. § 3.159(b).

All relevant evidence necessary for an equitable resolution of the issue on appeal has also been identified and obtained, to the extent possible. The evidence of record includes the reports of numerous VA examinations, the Veteran's VA and private treatment records, lay statements, and the transcript of the September 2010 Board hearing. 

The Board previously remanded this issue in December 2011, February 2013, May 2013, and September 2014 for further development. As was requested in the prior remands, all updated VA treatment records have been obtained and associated with the claims file, including the January 2009 magnetic resonance imaging (MRI) report. Private treatment records from Dr. D.H. were obtained and associated with the claims file. Additional VA examinations were held, and, following the December 2014 orthopedic examination and the April 2015 examination of the arteries and veins, there has been substantial compliance with the prior remand instructions, including the necessary responses to all questions posed for the VA examiners. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008). These VA examinations are found to be adequate for evaluation purposes, and no further examinations are necessary. See Barr v. Nicholson, 21 Vet. App. 303 (2007). All new evidence of record was reviewed prior to the issuance of the April 2015 Supplemental Statement of the Case. The Board therefore concludes that there was substantial compliance with the entirety of the Board's prior remand instructions. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

The record indicates that the Veteran had experienced an injury while working at the United States Postal Service resulting in a worker's compensation claim. The Postal Service was contacted requesting these records, and in September 2012 responded that no records existed for the Veteran. A Formal Finding of Unavailability was issued by the Appeals Management Center in September 2012. In July 2013, correspondence was received from the Postal Service stating that a search was conducted by Postal Service Headquarters and the National Record Center, but that no records were found for the Veteran. An additional Formal Finding of Unavailability was issued by the Appeals Management Center in September 2013. Furthermore, the Veteran submitted correspondence in December 2014 stating that his at-work injury was regarding a right shoulder injury and that there were no records pertaining to his left leg in conjunction with his worker's compensation claim.

In light of these efforts and communications, the Board believes that further attempts to obtain records from the Postal Service pertaining to the Veteran's worker's compensation claim would be unproductive as well as irrelevant to the current claim on appeal. See 38 U.S.C.A. § 5103A(a)(2) (stating that VA is not required to provide assistance to a claimant if no reasonable possibility exists that such assistance would aid in substantiating the claim); see also Hayre v. West, 188 F.3d 1327, 1331-1332 (Fed. Cir. 1999).

The Veteran also was provided an opportunity to set forth his contentions during the September 2010 Board hearing. Veterans Law Judges have a duty to explain fully the issues and to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488, 492 (2010). The record reflects that at the September 2010 Board hearing, the undersigned set forth the issue to be discussed, focused on the elements necessary to substantiate the claim for increase, and sought to identify any further development that was required to help substantiate the claim. Neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2) (2014) during the hearing, nor have they identified any prejudice in the conduct of the hearing.

Accordingly, appellate review may proceed without prejudice to the Veteran with respect to his claim. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993).


II. Background

The Veteran contends that his service-connected left leg chronic compartment syndrome warrants a rating higher than the 20 percent evaluation currently assigned. In a March 1991 rating decision, the Veteran was granted service connection for postoperative chronic compartment syndrome of the left leg and was assigned an evaluation of 20 percent. The Veteran most recently requested an increased evaluation for his leg disability in March 2005.

At his September 2010 Board hearing, the Veteran testified that because his job requires him to be on his feet all day, his leg is frequently swollen or "gives out," requiring rest, massage, ice, and heat. Board Hearing Tr. at 3. He reported that he has frequently missed work, up to one week per month, due to his leg pain and swelling. Id. at 3-4. The Veteran's spouse testified that he also has occasional severe pain near his leg surgery scars and that the pain is so severe it prevents him from being able to walk. Id. at 9-10. 

In April 2014, the Veteran was granted entitlement to a separate evaluation of 30 percent for group XI muscles and peripheral nerve neuropathy of the left foot, effective July 2, 2008. The April 2015 VA examiner noted that the Veteran's compartment syndrome had exerted high pressure on the nerves and muscles of the left leg which had damaged the left peroneal nerve causing the foot drop. The Board notes that the Veteran has not disagreed with the evaluation assigned for the separate, secondary disorder of left foot peripheral nerve neuropathy. Therefore only the symptoms associated with left leg chronic compartment syndrome are on appeal and will be considered at this time.

The Veteran's VA treatment records show occasional complaints of leg pain and swelling generally attributed to status post fasciotomy due to compartment syndrome. In September 2004, the Veteran reported increased left leg pain. The examiner noted no motor or sensory deficits. The Veteran was able to squat and recover easily. In April 2005, the Veteran reported having leg swelling after walking recently. Sense and reflexes were found to be normal. In February 2006, the Veteran reported occasional pain in his left leg. Examination found normal pulses and reflexes, and no dependent edema or motor or sensory defects.
The Veteran reported in April 2007 that in service he jumped from an airplane and landed on his leg so hard that it required compartment syndrome decompression surgery. The Veteran again reported left leg pain in July 2007 and January 2008.

In July 2008, the Veteran reported left leg swelling and foot drop. The Veteran reported in September 2008 that sometimes his leg pain is so severe that he cannot walk on that leg. In December 2008, May 2009, and December 2009, the Veteran reported continued swelling in his left leg and expressed concern that it could impact his need to take days off from work. A January 2009 MRI was performed due to complaints of pain in the lower limb, but examination showed that calf muscles and subcutaneous tissue were normal. There was no evidence of inflammation or any focal fluid collections. Definite venous thrombosis was not present.

The Veteran reported continued left leg pain with increasing symptoms in June 2010. His physician recommended that he increase his physical exercise. The Veteran reported having new symptoms of numbness and tingling in his left leg from the knee down in July 2011. In June 2012, he again reported swelling and pain related to standing on his legs at work. He was noted to be able to ambulate down the hallway and get onto the table without difficulty. He reported having pain near the location where the scars were. Physical examination found that the left lower extremity was slightly larger than the right and that the wounds were well healed with no abnormalities, redness, or warmth. The Veteran again reported leg pain in June 2014.

At a May 2005 VA examination of the peripheral nerves, the Veteran reported having swelling on a daily basis with pain and cramping. He reported that he has to sit and elevate his leg which impacts his job as a mail carrier. He stated that he had applied for a sedentary position as a clerk so that he could elevate his leg while at work. He also reported swelling and pain after strong physical activity or walking. On examination, the examiner found that the Veteran had a slight limp and enlarged left calf. There was no discoloration and pulses and reflexes were normal.

At a February 2007 VA examination, physical examination found no residuals of nerve or tendon damage, no muscle herniation, no loss of deep fascia or muscle, and no limitation of the motion of any joint. The examiner noted there were no significant effects on the Veteran's occupation. The examiner also noted that the Veteran had a 16 centimeter vertical scar and a 6 centimeter horizontal scar that were not tender or adherent.

At an August 2007 VA examination, the examiner noted no history of hospitalization or surgery, vascular trauma, aneurysm, arteriovenous fistula, varicose veins, erythromelalgia, or other vascular disorder. He noted that the Veteran complained of occasional swelling and pain in the left calf. The examiner stated that exercise or exertion was not precluded by the condition and there were no significant effects on his occupational functioning.

At a January 2009 VA neurological examination, it was found that the Veteran had normal senses and reflexes.

The Veteran also underwent a VA examination in February 2012. The Veteran reported having flare-ups that cause the leg to become numb or having paresthesias. Range of motion testing revealed left knee flexion of 140 degrees or greater and left knee extension to 0 degrees, with no objective evidence of painful motion or limitation of motion after repetitive motion. The examiner found no functional loss or impairment of the lower leg. The examiner noted no tenderness or pain to palpation, normal muscle strength, and normal stability. The Veteran did not utilize any assistive devices. Imaging showed no arthritis or other abnormality. The examiner noted that the disability did impact the Veteran's ability to work, as his job required him to be on his feet, and his left calf hurts after about 2 hours of being on his feet. He also noted that the Veteran can walk about 100 yards before experiencing claudication and that there was mild numbness in the left ankle constantly. 

The examiner noted that the Veteran had scars, but they were not painful and/or unstable and the total area was less than 39 square centimeters. The medial scar was 14 centimeters long and .5 centimeters wide, and the lateral scar was 7 centimeters long and .5 centimeters wide. They were both stable and superficial.

The Veteran underwent a VA examination in March 2013. The Veteran reported that he gets "shots of pain" in his leg all the way to his hip and lower back and that it would swell if he stands for more than 3 or 4 hours. The Veteran reported symptoms of muscle spasms, daily swelling, numbness of the toes and feet, foot and ankle pain, and foot dragging. He reported that he takes antiinflammatory drugs and treats the leg with rest, hot water, and massage. He stated that he has a flare-up at the end of every workday. Range of motion testing found flexion of 140 degrees or greater and extension of 0 degrees, with no objective evidence of painful motion or further limitation after repetitive motion. Physical examination found no tenderness or pain to palpation, slightly decreased muscle strength, and normal stability. The examiner noted that the Veteran had scars that were not painful and/or unstable and the total area was less than 39 square centimeters. The Veteran did not use any assistive devices. Ankle and foot X-rays showed no evidence of fracture or significant arthritic change, but did show a small calcaneal enthesophyte. Electromyogram (EMG) nerve conduction testing found abnormal response of the left peroneal nerve with demyelination of the nerve and axonal loss. The examiner noted that the Veteran's leg disability affected his ability to work due to pain, swelling, cramping, and foot dragging, although the Veteran continued to work eight hours a day. The examiner also noted that there was no evidence of drop foot and that he had a minimal limp.

A March 2013 left lower extremity arterial examination found no significant plaque, no significant stenosis, and normal velocities with triphasic waveforms. A venous duplex examination showed no evidence of deep venous thrombosis or superficial venous thrombosis.

The Veteran was afforded a VA examination for muscle injuries, the peripheral nerves, and the arteries and veins in September 2013. The examiner noted that the Veteran had a non-penetrating muscle injury and that he developed compartment syndrome after a jumping accident in 1989. The muscle group affected was identified as Group XI. The examiner found that the muscle injury affected muscle substance and function and that they swell and harden abnormally in contraction. The examiner found that this caused consistent weakness, lowered threshold of fatigue, fatigue-pain, and impairment of coordination. Muscle strength was normal, with no atrophy, and the Veteran used a cane as an assistive device. The examiner found no other pertinent findings, and electrodiagnostic tests showed no diminished muscle excitability to pulsed electrical current. There were no trophic changes, including thin skin, absence of hair, or dystrophic nails. The Veteran had claudication on walking between 25 and 100 yards. The examiner stated that the left peroneal nerve neuropathy was at least as likely as not caused by postoperative compartment syndrome. Reflexes were hypoactive in the left ankle and normal in the knee. Senses and gait were normal. He noted scars that were not painful and/or unstable and the total area was less than 39 square centimeters.

A November 2013 addendum stated that ankle/brachial index testing found a right ankle/brachial index of 1.10 and a left ankle/brachial index of 1.06, with bilaterally normal resting indices and waveforms noted.

The Veteran also underwent a VA knee and lower leg orthopedic examination in December 2014. An in-person examination was performed and the electronic claims folder was reviewed by the examiner, who diagnosed the Veteran with patellofemoral pain syndrome. The Veteran reported that he had knee popping and pain every day. The Veteran reported having flare-ups and pain when he had to stay on his feet all day, and the examiner noted that his functional impairment included not being able to rum or jump around. Physical examination found normal range of motion, with evidence of pain on weight bearing and localized tenderness. The Veteran was able to perform repetitive use testing, and pain, weakness, fatigability or incoordination did not significantly limit functional ability with repeated use over a period of time. The examiner stated that during a period of flare-up, due to pain and weakness, range of motion was likely limited to 0 to 100 degrees of flexion and 100 to 0 degrees of extension. Muscle strength and stability were normal. Scars were present, but were not painful or unstable, and had a total area of less than 39 square centimeters. X-rays showed no acute fracture, dislocation, joint effusion, or degenerative changes. The examiner also noted decreased strength in the left toes compared to the right toes, and the Veteran was noted to use a cane as an assistive device.

The Veteran's most recent examination was an April 2015 VA examination for the arteries and veins. The examiner performed an in-person examination and reviewed all electronic files. The Veteran reported having numbness that comes and goes and pain and weakness on exertion, as well as chronic swelling. He stated that his job duties have changed some at work to allow him to stay off his feet for part of the day and that pain wakes him at night and makes him fatigued. Physical examination found no trophic changes, persistent coldness, ischemic limb pain at rest, or deep ischemic ulcer. There was claudication on walking between 25 and 100 yards on a level grade at 2 miles per hour. The examiner diagnosed the Veteran with left leg compartment syndrome and claudication pain. 

III. Analysis

After having carefully reviewed the evidence of record, the Board finds that the Veteran does not meet the criteria for an assignment of a rating higher than 20 percent for postoperative chronic compartment syndrome of the left leg.

Disability evaluations are determined by the application of the Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2014). The percentage ratings contained in the Rating Schedule represent, as far as can practicably be determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual disorders in civil occupations. 38 U.S.C.A. § 1155 (West 2004); 38 C.F.R. §§ 3.321(a), 4.1 (2014).

Although compartment syndrome is not specifically listed in the Rating Schedule, when a disability is not specifically listed in the Rating Schedule, it may be rated under a closely related injury in which the functions affected and the anatomical localization and symptomatology are closely analogous. 38 C.F.R. § 4.20 (2014). In this case, the Board finds that the Veteran's primary symptomatology associated with his left leg compartment syndrome is swelling, pain, and lack of stamina caused by vascular impairment, and these symptoms are most comparable to the rating criteria for rating the vascular disorders of the limbs. As will be discussed below, the Board has also considered whether rating the Veteran's left leg disability under the criteria pertaining to functional limitation would result in a higher rating. As it does not allow for a rating higher than 20 percent, the Board finds that rating under the criteria for vascular disorders of the limbs is the most appropriate and most favorable criteria for the Veteran.

The Veteran was initially awarded an evaluation for postoperative left leg chronic compartment syndrome under Diagnostic Code 7116, for intermittent claudication. 38 C.F.R. § 4.104, Diagnostic Code 7116 (1990). The regulations for rating disabilities pertaining to cardiovascular disorders of the limbs were revised in 1998, prior to the Veteran's current March 2005 claim for an increased rating. Effective January 12, 1998, the regulations pertaining to rating diseases of the arteries and veins removed Diagnostic Code 7116 and amended the criteria under Diagnostic Codes 7111, 7114, and 7115 for the vascular disorders of artery aneurysm, arteriosclerosis obliterans, and thrombo-angitis obliterans (Buerger's Disease). See 62 Fed. Reg. 65,207 (December 11, 1997). 

Under Diagnostic Codes 7111, 7114, and 7115, a 40 percent rating requires claudication on walking between 25 and 100 yards on a level grade at 2 miles per hour, and; trophic changes (thin skin, absence of hair, dystrophic nails) or ankle/brachial index of 0.7 or less. Claudication on walking more than 100 yards, and diminished peripheral pulses or ankle/brachial index of 0.9 or less warrants a 20 percent rating. 38 C.F.R. § 4.104, Diagnostic Codes 7111, 7114, 7115.

The ankle/brachial index is the ratio of the systolic blood pressure at the ankle (determined by Doppler study) divided by the simultaneous brachial artery systolic blood pressure. The normal index is 1.0 or greater. 38 C.F.R. § 4.104, Diagnostic Codes 7111, 7114, 7115, Note (1).

Claudication is defined as "limping or lameness," and intermittent claudication is "a complex of symptoms characterized by pain, tension, and weakness in a limb when walking is begun." Dorland's Illustrated Medical Dictionary 369 (32nd ed. 2012). 

The Veteran's VA examinations show that he does have claudication on walking between 25 and 100 yards on a level grade at 2 miles per hour, which is one of the criteria for a rating of 40 percent under Diagnostic Codes 7111, 7114, or 7115. 

The Veteran has not, however, at any time during the period on appeal, been found to have trophic changes, such as thin skin, absence of hair, or dystrophic nails, and his ankle/brachial index was tested in November 2013 and found to be 1.06 in the left lower extremity. The Veteran was not found to have trophic changes at any of his numerous VA examinations discussed above. At the February 2012 VA examination, it was specifically noted that there were no ischemic changes, including ulcers, coldness of feet, or thin skin. At the September 2013 and April 2015 examinations, it was noted that there was no thin skin, absence of hair, dystrophic nails, persistent coldness of the limb, any ischemic limb pain at rest, or ischemic ulcer. The Veteran has also not asserted that he has had any of these symptoms at any time, and there is no indication that the findings at the VA examinations, including that of the November 2013 ankle/brachial testing, are not accurate representations of his current symptoms.

The rating criteria for the assignment of a 40 percent rating under Diagnostic Codes 7111, 7114, and 7115 clearly specify that a 40 percent rating requires that both the claudication criterion be met "and" that either trophic changes or an ankle/brachial index of .7 or less be present. See Melson v. Derwinski, 1 Vet. App. 334, 337 (1991) (all rating criteria that are conjunctive versus disjunctive, as evidenced by the use of the word "and," must be satisfied to warrant a higher rating). The Board therefore must find that a rating in excess of 20 percent is not warranted. 38 C.F.R. § 4.104, Diagnostic Codes 7111, 7114, 7115.

The Board has considered the applicability of alternative Diagnostic Codes for evaluating the Veteran's left leg disability, but finds that no higher rating is assignable. While the Veteran has not been found to have a musculoskeletal disability, the Board has considered whether a higher rating may be assigned for functional impairment of the left lower extremity under 38 C.F.R. § 4.71a, Diagnostic Codes 5256-5263 (2014). Disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. Functional loss may be due to pain supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. 38 C.F.R. § 4.40 (2014). Functional loss, supported by adequate pathology and evidenced by visible behavior of the veteran undertaking the motion, is recognized as resulting in disability. See DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. §§ 4.10, 4.40, 4.45 (2014).

The Veteran has not, however, been found to have any notable loss of range of motion at any of the VA examinations during the period on appeal. Range of motion testing in February 2012, March 2013, and December 2014 found normal range of motion in the left leg, including after repetitive motion. The December 2014 VA examination indicated that during a period of flare up, range of motion in the leg would be limited to 100 degrees of flexion and 0 degrees of extension. Even using this estimation of limited motion during flare-up, the impact on functional motion is not sufficient to warrant a compensable rating under Diagnostic Codes 5260 or 5261. The Board therefore finds that no higher rating can be assigned under the Diagnostic Codes pertaining to limitation of motion.

Although the Veteran has not filed a claim for service connection for his scars related to his prior surgeries for compartment syndrome, the Board has nonetheless also considered whether a separate compensable rating for the scars associated with surgery for compartment syndrome is warranted. Although the Veteran has clearly been shown to have two scars from his prior surgery, at multiple examinations it was noted that these scars constitute an area less than 39 square centimeters and are not painful or unstable. See 38 C.F.R. § 4.118, Diagnostic Codes 7801-7805. Although it has been alleged that the Veteran has severe pain in specific areas of his leg near the scar locations, it has not at any time been indicated that the scars themselves cause pain. The Board therefore finds that the criteria for a separate compensable rating for scars associated with service-connected left leg compartment syndrome have not been met, and a separate evaluation for the Veteran's scars need not be considered at this time. Id.

In summary, the medical evidence of record indicates that the Veteran's left leg postoperative compartment syndrome is appropriately evaluated as 20 percent disabling, and no higher rating is warranted. The benefit sought on appeal is denied.

IV. Extraschedular Consideration

The Board has also considered whether referral for an extraschedular rating is appropriate. The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. 38 C.F.R. § 3.321(b)(1) (2014). Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008). Notably, 38 C.F.R. § 3.321(b)(1) also provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities. Johnson v. McDonald, 762 F.3d 1362, 1365 (Fed. Cir. 2014).

Under the approach prescribed by VA, if the rating criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Related factors include "marked interference with employment" and "frequent periods of hospitalization." 38 C.F.R. § 3.321(b)(1).

When the rating schedule is inadequate to evaluate a claimant's disability picture, then the case must be referred to the Under Secretary for Benefits or the Director of Compensation Service for a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

As discussed above, the evidence in this matter demonstrates that the Veteran's symptoms are primarily manifested by pain, swelling, and severe flare-ups following extended periods of standing or exertion. The rating criteria in effect under Diagnostic Codes 7111, 7114, and 7115 explicitly deal with the symptoms related to claudication, which include pain, weakness, and other impairment to the ability to walk. See Dorland's Illustrated Medical Dictionary 369. The rating criteria therefore reasonably describe the Veteran's disability level, even when considering any potential combined effects of his disabilities under the Federal Circuit's guidance in Johnson, 762 F.3d 1362. A separate rating of 30 percent has already been assigned for the neuropathy that is secondary to the Veteran's compartment syndrome, and consideration of whether the Veteran has an ankle disability that is secondary to this disorder has been referred above for consideration by the AOJ. There is no evidence that the Veteran has ever been hospitalized for his left leg compartment syndrome, and while he has indicated that he has missed work due to leg pain, he continues to work full time and has also stated that his work duties have been modified to allow him to be seated during parts of the work day.

In short, there is no indication in the record that the average industrial impairment from postoperative chronic compartment syndrome of the left leg has been in excess of that contemplated by the assigned 20 percent rating; the Veteran's disability picture is not shown to be exceptional or unusual. Therefore, referral for assignment of an extraschedular evaluation in this case is not in order. Floyd v. Brown, 9 Vet. App. 88, 95 (1996); Bagwell v. Brown, 9 Vet. App. 337 (1996). 






 (CONTINUED ON NEXT PAGE)


ORDER

Entitlement to a rating in excess of 20 percent for postoperative chronic compartment syndrome of the left leg is denied.



____________________________________________
Donnie R. Hachey
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs