Citation Nr: 1610609 
Decision Date: 03/16/16 Archive Date: 03/23/16

DOCKET NO. 14-25 118 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Seattle, Washington


THE ISSUES

Entitlement to an initial rating in excess of 30 percent disabling for gastroesophageal reflux disease (GERD), with Barrett's esophagus, status post fundoplication. 

Entitlement to an initial rating in excess of 10 percent disabling for sinusitis.


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Marcus J. Colicelli, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1977 to February 1978 and from March 1986 to September 2008.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from March 2009 and December 2012 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office in Seattle, Washington. 

The March 2009 rating decision awarded the Veteran an initial rating of 10 percent disabling for his GERD, effective October 1, 2008, and a non-compensable rating for his sinusitis, effective October 1, 2008. The Veteran submitted a notice of disagreement (NOD) with this decision in March 2010. A statement of the case (SOC) was not issued for either claim. Thereafter, in a December 2012 rating decision, the RO increased the evaluation of the Veteran's GERD to 30 percent disabling, effective October 1, 2008, and assigned a rating of 10 percent disabling for the Veteran's sinusitis, effective October 1, 2008. The Veteran submitted a notice of disagreement (NOD) in May 2013 contesting the award of 30 percent disabling for his GERD. A statement of the case (SOC) was issued in April 2014 and the Veteran perfected his appeal with the timely filing of a VA Form 9 in May 2014. 

Despite the December 2012 grant of an increased evaluation for his GERD, the Veteran has not been awarded the highest possible evaluation. As a result, he is presumed to be seeking the maximum possible evaluation. See May 2013 NOD; see also May 2014 VA Form 9. The issue remains on appeal, as the Veteran has not indicated satisfaction with the 30 percent rating. A.B. v. Brown, 6 Vet. App. 35 (1993).

The issue of entitlement to service connection for sinusitis is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

Gastroesophageal reflux disease (GERD), with Barrett's esophagus, status post fundoplication has been manifested by persistently recurrent epigastric distress, dysphagia, pyrosis, reflux, regurgitation, dysphagia, nausea, melena; however, the clinical evidence does not show that the disability was productive of severe impairment of health, anemia, hematemesis, vomiting and material weight loss.


CONCLUSION OF LAW

The criteria for an initial rating in excess of 30 percent for GERD, with Barrett's esophagus, status post fundoplication, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1-4.3, 4.7, 4.114, Diagnostic Code 7399-7346 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

The VA has a duty to provide specific notification to the Veteran and assist him with the development of evidence pursuant to the Veterans Claims Assistance Act (VCAA). In a claim for an increased evaluation, the VCAA requires generic notice, that is, namely, information sent to the Veteran indicating that he or she must submit evidence demonstrating a worsening or increase in severity of the disability, the effect that worsening has on employment, and general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

Here, the VCAA duty to notify was satisfied by way of letters sent to the Veteran in May 2008 and May 2013 that fully addressed all notice elements. The letters informed the Veteran of what evidence was required to substantiate the claim and of the Veteran and VA's respective duties for obtaining evidence. In any event, in his statements and testimony, the Veteran demonstrated his actual knowledge of the elements necessary to substantiate his claim. See Short Bear v. Nicholson, 19 Vet. App. 341, 344 (2005). 

As to VA's duty to assist, the Board notes that pertinent records from all relevant sources identified by the Veteran, and for which he authorized VA to request, have been obtained. 38 U.S.C.A. § 5103A. VA has associated service treatment records, post-service VA, and private medical records with the claims folder. Additionally, the Veteran was afforded VA examinations. VBMS and Virtual VA records have been reviewed.

The Veteran has been afforded multiple VA examinations in order to determine the severity of his GERD, in June 2008, February 2011 and in June 2013. The Board finds that the examinations are adequate in order to evaluate the Veteran's service-connected disability decided herein as they include interviews with the Veteran, a review of the record, and full examinations, addressing the relevant rating criteria. Moreover, neither the Veteran nor his representative has alleged that his disability has worsened in severity since the most recent VA examination. Rather, with respect to the claim, they argue that the evidence reveals that the disability has been more severe than the currently assigned rating for the duration of the appeal period. Palczewski v. Nicholson, 21 Vet. App. 174 (2007) (the passage of time alone, without an allegation of worsening, does not warrant a new examination). Therefore, the Board finds that the examinations of record are adequate to adjudicate the Veteran's claim for an increased rating and no further examination is necessary. 



II. Increased Ratings

The Veteran seeks an increased rating for his service-connected GERD. He asserts that his disability is more severe than what the current rating represents. Specifically, the Veteran contends that due consideration has not been afforded his April 2013 Toupet fundoplication and the interplay between the residuals of this surgery and his current disability rating. See May 2014 VA Form 9 ("It is evident that the surgery (Toupet Fundoplication) performed 3 April 2013 was not taken into consideration during the review process").

Applicable Laws

Disability ratings are based on the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Where there is a question as to which of two ratings shall be applied, the higher evaluations will be assigned if the disability more closely approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The determination of whether an increased disability rating is warranted is to be based on a review of the entire evidence of record and the application of all pertinent regulations. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

The Board has considered the entire record, including the Veteran's VA clinical records and private treatment records. These show complaints and treatment, but will not be referenced in detail. The Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000). Therefore, the Board will discuss the evidence pertinent to the rating criteria and the current disability.

The Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods. 

The evaluation of the same disability under various diagnoses, known as pyramiding, is generally to be avoided. 38 C.F.R. § 4.14 (2014). The critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the disabilities is duplicative or overlapping with the symptomatology of the other disability. See Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2014). 

The Veteran has been diagnosed with GERD, Barrett's esophagus, hiatal hernia, dysphagia, pyrosis, and melena. Other than the hiatal hernia, there is no diagnostic code which specifically corresponds to the other esophageal disabilities in VA's rating schedule. When an unlisted disability is encountered, it is permissible to rate the disability under the diagnostic code for a closely related disease or injury, by analogy. See 38 C.F.R. § 4.20 (2015). To determine whether a diagnostic code listing is analogous to a claimant's disability, VA should consider (1) the functions affected by the disability, (2) the location of the disability, and (3) the similarity of the symptoms of each disability. Lendenmann v. Principi, 3 Vet. App. 345, 351 (1992).

The RO rated the Veteran's GERD, Barrett's esophagus, hiatal hernia, dysphagia, pyrosis, and melena by analogy under Diagnostic Code 7399-7346. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires the use of an additional diagnostic code to identify the basis for the rating assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27 (2015). Diagnostic Code 7399 refers to an unlisted disability of the digestive system. Diagnostic Code 7346 pertains to hiatal hernia. 

The Board acknowledges that the Veteran has been diagnosed with dysphagia, which might appropriately be rated under Diagnostic Code 7203 for stricture of the esophagus in some circumstances. See 38 C.F.R. § 4.114 , Diagnostic Code 7203 (2014). However, diagnostic Code 7346 specifically includes dysphagia in the rating criteria. Because of the overall nature of the Veteran's disability, the Board finds that the rating criteria applied by the RO (i.e., Diagnostic Code 7346 for hiatal hernia) are appropriate. See Pernorio v. Derwinski, 2 Vet. App. 625 (1992); 38 C.F.R. §§ 4.20, 4.21 (2015). The Board can identify no more appropriate diagnostic codes and the Veteran has not identified any. See Butts v. Brown, 5 Vet. App. 532 (1993). Accordingly, the Board will proceed with an analysis of the Veteran's disability under Diagnostic Code 7346. 

Under Diagnostic Code 7346, if the disability is manifested by symptoms of pain, vomiting, material weight loss, and hematemesis or melena with moderate anemia; or by other symptom combinations productive of severe impairment of health, a 60 percent rating is warranted. If the condition is manifested by persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, and is productive of considerable impairment of health, a 30 percent rating is warranted. A 10 percent rating is warranted where two or more of the symptoms for a 30 percent rating are present and of less severity. 38 C.F.R. § 4.114 Diagnostic Code 7346 (2015). 

For purposes of evaluating conditions in 38 C.F.R. § 4.114, the term "substantial weight loss" means a loss of greater than 20 percent of the individual's baseline weight, sustained for three months or longer. 38 C.F.R. § 4.112 (2015). The term "minor weight loss" means a weight loss of 10 to 20 percent of the individual's baseline weight, sustained for three months or longer. Id. 

In evaluating the Veteran's ERD, Barrett's esophagus, hiatal hernia, dysphagia, pyrosis, and melena, the Board may not deny entitlement to a higher rating on the basis of relief provided by medication when those effects are not specifically contemplated by the rating criteria. See Jones v. Shinseki, 26 Vet. App. 56, 62 (2012); see also 38 C.F.R. § 4.114, Diagnostic Code 7346 (containing no reference to the effects of medication) (2015).

Under governing law, ratings under Diagnostic Codes 7301 to 7329, inclusive, 7331, 7342, and 7345 to 7348, inclusive, are not be combined with one another. 38 C.F.R. §§ 4.14, 4.113, 4.114 (2014). Rather, a single evaluation is to be assigned under the diagnostic code that reflects the predominant disability picture, with elevation to the next higher evaluation where the severity of the overall disability warrants such evaluation. 38 C.F.R. § 4.114 (2015).

Facts 

Prior to the Veteran's discharge from active duty, he was afforded a VA examination in June 2008 where he was diagnosed with GERD. See June 2008 VA examination. The Veteran reported experiencing symptoms since 1996, and was currently taking esomeprazole which resulted in a decrease in "severity and occurrence by 75%." Id. The Veteran reported GERD symptoms three to five times a week with "regurgitation into throat" and without any effect on his work or daily life.

The Veteran was next afforded a VA examination for his GERD in February 2011. See February 2011 VA examination. The Veteran reported that his GERD was "progressively worse" since onset, and that his medication did not provide "good control" of the multiple, "chronic symptoms." Id. The Veteran reported symptoms of nausea "several times a week" and dysphagia "most of the time," resulting in difficulty swallowing both liquid and solid foods "less than monthly." Id. The Veteran reported daily bouts of esophageal distress with pain, heartburn and regurgitation. Id. The Veteran also reported "what he thinks looks like melena" occurring two to three times monthly. Id. The examiner noted that the Veteran's dysphagia is "secondary to vocal cord damage" and that there is no hematemesis or anemia. Id. The VA examiner also noted that the Veteran reported no gastric distress during a December 2010 visit to his primary care physician, and that the Veteran has not discussed any of his GERD symptoms with his doctor. Id. The examiner noted the Veteran's weight as 220 lbs. without malnutrition and that his GERD had not caused any caused him to lose any time from his full-time job over the past year. Id. The Veteran reported a moderate effect of his symptoms on his eating habits. Id. 

Private medical records indicate that the Veteran underwent an Upper GI endoscopy in September 2011. See September 2011 Oregon Clinic. The Veteran was diagnosed with Barrett's esophagus and advised that he would need a follow-up endoscopy in one year. Id. A September 2012 follow-up endoscopy revealed a small hiatal hernia in addition to Barrett's esophagus which was found to be negative for dysplasia. See September 2012 Oregon Clinic. A December 2012 pH monitoring study noted preoperative diagnoses of "dysphagia, heartburn, regurgitation, cough, and chest pain" and after performing the procedure, identified diagnoses of " 1. Weak peristalsis with large peristaltic defect...2. Mild GE junction outflow obstruction...3. Poorly relaxing UES...4. Abnormal-esophageal function with decrease in both liquid and viscous bolus transit." See December 2012 Oregon Clinic. The examiner noted that achalasia was not a consideration in this case and that the "outflow obstruction includes hiatal hernia, mild peptic stricture and eosinophilic esophagitis." Id. 

In January 2013, the Veteran presented to the Oregon clinic for surgical treatment for his GERD. See January 2013 Oregon Clinic ("Procedure orders...Lap Fundo...Toupet"). Diagnoses of Barrett's esophagus and a small hiatal hernia were noted, as was the Veteran's daily medicinal treatment of acid reflux. Id. A system review revealed difficult and painful swallowing and abdominal pain. Id. The Veteran's weight was recorded as 220 lbs. In April 2013, the Veteran underwent "laparoscopic repair of small hiatal hernia with partial fundoplication and upper endoscopy." See April 2013 Oregon Clinic. The Veteran underwent a manometry study in October 2013. See October 2013 Oregon Clinic. Post-surgical symptoms noted food sticking on a daily basis, liquids sticking once or twice a week, no heartburn, no regurgitation, no nausea/vomiting, no abdominal pain and no weight loss. Id. The manometry study revealed "possible tight fundoplication," no evidence of a hiatal hernia, and no dysphagia as the 24 hour pH test was "consistent with normal acid exposure in the distal esophagus." Id. 

The Veteran was most recently afforded a VA examination in June 2013. See June 2013 VA examination. An in-person examination was conducted and available VAMC and private treatment records were reviewed, but the examiner noted that the above referenced "records of his recent surgery" were not available for review. Id. ("He states he had a Toupet fundoplication 04/03/2013 at Providence Portland (those records not available to the examiner)"). However, regarding the absence of these records the examiner noted that "if upper endoscopy was indicated or performed, the findings of erythema, ulcers, and/or strictures are consistent with the diagnosis of GERD." Id. The examiner identified diagnoses of GERD and Barrett's esophagus. The examiner identified relevant medical records observing that the Veteran had "difficulty controlling his GERD symptoms on PPI's" and that a September 2011 endoscopy demonstrated "mild Schatzki's ring, LA Grade C reflux, esophagitis, and Barrett's esophagitis." Id. The Veteran reported that his April 2013 procedure was negative for malignancy, but that he was on a clear liquid diet resulting in the loss of approximately twenty pounds. Id. The Veteran reported dysphagia for both solids and liquids, "including his own saliva," and heartburn that has awakened him at least "6-12 times" at night since his April surgery. Id. The Veteran reported that he "no longer has perceptible reflux since the surgery," and was "unsure" about regurgitation. Id. The Veteran reported occasional queasiness and occasional melena, and a sense of chest heaviness that follows swallowing. Id. Upon examination, the examiner noted symptoms of dysphagia, pyrosis, regurgitation, heartburn, and "4 or more" occasions of sleep disturbance, but did not identify any persistent episodes of epigastric distress, reflux, or arm pain. Id. The examiner noted twenty pounds of weight loss over the last two year period, noting the Veteran's weight reduced from 220 lbs. to 200 lbs. The examiner also identified symptoms of transient nausea occurring four or more times a year and recurrent melena occurring one to nine days a year, but also noted that there were no symptoms of vomiting or hematemesis present. Id. The examiner did not identify any esophageal stricture. Id. Regarding functional impact, the examiner noted that the Veteran was not currently working since he was still on convalescent leave since his surgery. Id. The examiner opined that the Veteran was capable of a "shortened work day and part-time work," and that his illness would not "prevent sedentary work or with little public interaction or loose supervision." Id. 

Analysis 

Having carefully considered the Veteran's contentions in light of the evidence of record and the applicable law, the Board finds that the Veteran's gastroesophageal reflux disease (GERD), with Barrett's esophagus, status post fundoplication are appropriately evaluated as 30 percent disabling for all periods under consideration. The record reflects that the manifestations of the Veteran's disability include by persistently recurrent epigastric distress, dysphagia, pyrosis, reflux, regurgitation, dysphagia, nausea, melena. While these symptoms have varied and at times have been mild, the Board finds that on average the Veteran's symptoms are productive of considerable impairment of health. 

The criteria under Diagnostic Code 7346 are conjunctive, not disjunctive; thus all criteria must be met. See Melson v. Derwinski, 1 Vet. App. 334, 337 (1991) (use of the conjunctive "and" in a statutory provision meant that all of the conditions listed in the provision must be met). Under Diagnostic Code 7346, a 60 percent rating is warranted if the disability is manifested by symptoms of pain, vomiting, material weight loss, and hematemesis or melena with moderate anemia; or by other symptom combinations productive of severe impairment of health.

While the Veteran has pain, sleep disturbances and occasional melena and nausea, the evidence shows the Veteran has good overall nutritional health. The VA examinations consistently reveal that the Veteran had no weight loss, other than a slight twenty pound aberration as noted from occurring from a two week liquid diet, malnutrition, vomiting, or anemia related to his esophageal disability. Other than the aforementioned loss of twenty pounds due to his two-week liquid diet, the Veteran's weight throughout the course of the period on appeal has been approximately 220 lbs. There is no note of hematemesis, nor of anemia. While nausea has been noted, there has never been any episodes of vomiting reported by the Veteran. The June 2013VA examiner found the Veteran had some functional limitation, but concluded that part-time and sedentary work were available to the Veteran. Thus, the Veteran's disability does not result in severe impairment of health. As such, the Veteran does not meet the criteria for or warrant a 60 percent rating for any period on appeal. 

In addition to the medical evidence cited above the Board has carefully considered the lay evidence offered by the Veteran in the form of his correspondence to VA and his statements to various medical examiners and providers. However, the lay evidence of record simply does not show that the Veteran's disability has met the criteria for a rating higher than the currently-assigned 30 percent. Specifically, the Veteran has contended that the current assignment does not take into account the Veteran's surgical interventions for his disability. See May 2014 VA Form 9 ("It is evident that the surgery (Toupet Fundoplication) performed 3 April 2013 was not taken into consideration during the review process"). However, as noted above the June 2013 VA examiner evaluated the Veteran following this procedure and meticulously accounted for his current symptoms following the April 2013 event. The examiner noted that following the procedure the Veteran had improved symptoms, noting that he "no longer has perceptible reflux since the surgery" and was also "unsure" about regurgitation. Therefore, while the Board has duly considered the Veteran's contentions regarding the impact of his surgical intervention in the rating assignment, the Board finds that the June 2013 examiner thoroughly addressed this issue in his examination, and his findings are contemplated by the applicable diagnostic code. 

Extraschedular Consideration

The Board has considered whether referral for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) is indicated. 

Although the Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b)(1) in the first instance, the Board is not precluded from considering whether the case should be referred to the Director of VA's Compensation Service for a rating.

The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the schedular ratings for the service-connected disability are inadequate. 

This is accomplished by comparing the level of severity and symptomatology of the service-connected disability with the established criteria. Thun v. Peake, 22 Vet. App. 111, 115 (2008); aff'd Thun v. Peake, 572 F.3d 1366 (Fed. Cir. 2009).

If the criteria reasonably describe a veteran's disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, and the assigned schedular evaluation is, therefore, adequate and referral for an extraschedular rating is not required. Thun, Id. 

Here, the rating criteria reasonably describe and assess the Veteran's disability level and symptomatology. The Veteran's disability results in epigastric distress, dysphagia, pyrosis, regurgitation and melena, as contemplated by DC 7346.

The manifestations are contemplated by the provisions of the rating schedule. As the Veteran's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is adequate. 

Thus, the Board finds no basis for referring the case for an extraschedular consideration. 

Additionally, the Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). In this case, there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

ORDER

An increased initial evaluation in excess of 30 percent disabling for GERD, is denied.



REMAND

In a March 2009 rating decision, the RO denied the Veteran's claim of entitlement to an initial compensable rating for his sinusitis disability. In March 2010, the RO received a statement from the Veteran indicating his disagreement with the decision. See March 2010 NOD ("Item #6 - Sinusitis...I would like the finding of 0 percent to be re-evaluated"). The Board notes that the Veteran was awarded an initial rating of 10 percent disabling for his sinusitis in a December 2012 rating decision. However, as this award is not the maximum evaluation possible and is therefore not to be considered a complete grant of benefits sought, a statement of the case (SOC) must be issued on this claim. Manlincon v. West, 12 Vet. App. 238 (1999). Where a SOC has not been provided following the timely filing of a notice of disagreement, a remand, not a referral to the RO, is required by the Board. Id. 

Accordingly, the case is REMANDED for the following actions:
 
1. The RO should issue an SOC with respect to the issue of entitlement to an increased initial rating for the Veteran's service-connected sinusitis.

The Veteran should be advised of the time period in which a substantive appeal must be filed in order to obtain appellate review of that issue. 
 
The claims file should be returned to the Board for further appellate consideration only if the Veteran files a timely substantive appeal. 

The Board intimates no opinion as to the ultimate outcome of this case. 

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
WAYNE M. BRAEUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs